[Criminal No. 899. Filed October 15, 1941.]

[118 Pac. (2d) 71.]

## THE STATE OF ARIZONA, Appellee, v. BRINO H. HANKS, Appellant.

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General, for Appellee.

Mr. Z. Simpson Cox and Mr. Renz L. Jennings, for Appellant.

McALISTER, J.—This is an appeal by Brino Hanks from a judgment of conviction of the crime of aggravated assault and from orders overruling his motion for a new trial and in arrest of judgment. He will be designated hereafter as the defendant.

The record discloses that Harry Ong, the prosecuting witness, a young man twenty-two years of age, lived with his parents at 1701 West Linden Street, Phoenix, and worked in the grocery and meat market which his father had run at that point for seven or eight years. On the afternoon of May 11, 1940, between five and six o'clock, his small sister went into the store and told him that Fred Hanks, the thirteen year old son of defendant, was on top of his automobile which was standing in front of the old store building just east of the present one at 1701. He stepped outside and found Fred on the hood and either asked him to get off or pulled him off and then took him by the arm with one hand and by the neck or hair with the other and started with him along the sidewalk toward his home at 1707 West Linden, the third door west of 1701.

As he was going along the walk with Fred the latter's father, the defendant, drove by in his truck on his way home. Noticing an altercation on the sidewalk between two people, as he passed, he stopped just as he turned into his driveway and, having kept

his eye on the fracas from the time he recognized his son Fred as one of them, he quickly got out of his truck, pushed the seat forward, grabbed a gun and started toward them. When within a short distance of them, he shot three times, in rather rapid succession, at Harry Ong, one of the bullets going in his back and coming out through the upper part of his neck in front, piercing the lung and cutting a small vein or artery as it passed through his body. He ran into the store, lay on the floor, bled profusely and was then taken to the hospital where he remained until discharged some seven or eight weeks later.

Defendant testified that he shot Harry because he was mistreating or beating his son Fred. There was much testimony from eye witnesses as to the details of the fracas, some stating that Harry was mistreating Fred and others that he was not, but whether the witnesses for the state or those for defendant were correct on this point it is not necessary to determine in order properly to dispose of the questions raised by the appeal.

Following a preliminary hearing an information was filed against defendant accusing him of the crime of "assault with intent to commit murder, a felony," the charging part of which was in this language:

"The said Brino H. Hanks on or about the 11th day of May, 1940, and before the filing of this information at and in the County of Maricopa, State of Arizona, did then and there wilfully and unlawfully and feloniously assault one Harry Ong, a Human being, with the intent to murder the said Harry Ong; . . . "

At the conclusion of the arguments, the court instructed the jury that "the charge of assault with intent to commit murder also includes the charge of an aggravated assault" and in accordance with this view submitted to it, in addition to forms of verdict finding defendant guilty of assault with intent to commit mur-

der and not guilty, one authorizing it to convict him of aggravated assault and this was the one the jury returned.

Defendant contends that the offense of aggravated assault is not included in the crime of assault with intent to commit murder and as we view the record the assignment that the court erred in so advising the jury constitutes the one serious question presented by the appeal. Whether it should be sustained depends upon whether an aggravated assault is or is not included in the crime of assault with intent to commit murder.

An assault is defined by section 43–601, Arizona Code 1939, as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another," and, according to section 43–603 of the same code, becomes aggravated when it is committed under any of the following six circumstances:

"[1] When the person committing the offense goes into a private home and is there guilty of assault or battery; [2] when committed by a person of robust health or strength upon one who is decrepit; [3] when committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child; [4] when the instrument or means used is such as to inflict disgrace upon the person assaulted, as an assault or battery with a whip or cowhide; [5] when a serious bodily injury is inflicted upon the person assaulted; [6] when committed with a premeditated design and by the use of means calculated to inflict great bodily injury."

An assault with intent to commit murder is no more definitely defined by the statute than the term itself implies, section 43–606 of the Arizona Code 1939, merely providing that

" . . . Every person who assaults another, with intent to commit murder, is punishable by imprisonment

in the state prison not less than five (5) years and which may extend to life.''

The statute, section 44–1923, Arizona Code 1939, provides that ''Upon an indictment or information for any offense the jurors may convict the defendant of . . . any offense which is necessarily included in the offense charged.'' This language, it is plain, limits lesser offenses of which a defendant may be convicted to those offenses which are necessarily included in the charge of the higher offense, but it has been a part of the statutes for many years, and has without exception been so construed as to permit the conviction also of a defendant of any lesser. offense included in the greater by virtue of the fact that the circumstances constituting the lesser are properly alleged in the indictment or information charging the greater. For instance, a conviction of an assault with a deadly weapon, an offense not necessarily included in an assault with intent to commit murder, since the latter may be committed otherwise than by the use of a deadly weapon, has always been upheld where the indictment or information charges an assault with a deadly weapon with intent to commit murder. *Mapula et al.* v. *Territory,* 9 Ariz. 199, 80 Pac. 389; *Territory* v. *West,* 4 Ariz. 212, 36 Pac. 207; *Hann* v. *State,* 30 Ariz. 366, 247 Pac. 129.

And the same is true of an aggravated assault. One may be convicted of this offense on an information charging either an assault with intent to commit murder or murder itself, if the information sets forth circumstances which in themselves constitute it. *Mapula* v. *Territory, supra.* The information in this case was evidently drawn under subdivision 1 of section 44–711, Arizona Code 1939, providing that an indictment or information is valid and sufficient if it charges an offense by using the name given it by the common

law or the statute, for it does not state the facts constituting either the higher or lower offense but merely alleges that the defendant "did then and there wilfully and unlawfully and feloniously assault one Harry Ong, a Human being, with the intent to murder the said Harry Ong." So, if a conviction of an aggravated assault may be had under it, it is because such an assault is necessarily included in an assault with intent to commit murder, in the sense that a simple assault is an essential element of an aggravated assault, an assault with a deadly weapon, an assault with intent to commit murder or even murder itself. In these instances, and there are others (section 43–607, Arizona Code 1939), it is impossible to commit the higher offense without committing a simple assault at the same time.

But is this true of an aggravated assault? Is one guilty of an assault with intent to commit murder necessarily guilty of this lesser offense? Clearly a person may be guilty of an assault with intent to commit murder, or even of murder itself, without committing the assault under circumstances that would make it aggravated under any of the first five subdivisions of section 43–603, *supra*. For instance, one could be guilty of the higher offense without going into a private home and there committing an assault. This proposition is not disputed as to the first four subdivisions of this section, but some question is raised as to the fifth, that is, there is some contention that an assault with intent to commit murder includes an assault which inflicts a serious bodily injury upon the person assaulted. The fallacy of this view readily appears, however, when it is suggested that one may be guilty of an assault with intent to commit murder without inflicting upon the person assaulted any bodily injury at all, serious or otherwise. For instance, if a person

shoots at another intending to kill him, and the bullet pierces the clothing of the latter only, or misses him entirely, no bodily injury whatever is inflicted, yet there could be no question but that the person firing the shot would be guilty of an assault with intent to commit murder.

The main controversy arises, however, over the question whether an assault with intent to commit murder necessarily includes an assault committed under the circumstances set forth in subdivision 6 of section 43–603, that is "when committed with a premeditated design and by the use of means calculated to inflict great bodily injury." The defendant contends that it does not, while the position of the state is that it does. Before an assault committed under this sub-division may become aggravated two things must be true; first, it must be committed "with a premeditated design," and second, "by the use of means calculated to inflict great bodily injury." There can be no question but that an information charging "an assault with intent to commit murder" merely by naming the offense, as in this instance, charges that the assault was committed "with a premeditated design" but whether it charges also that the assault was committed "by the use of means calculated to inflict great bodily injury" is not quite so clear. However, one who intends to murder another cannot carry his intention into effect without the use of a weapon or means making such an act possible and many authorities hold, we think properly, that it is necessary that one have the ability to effectuate his purpose before he may be convicted of an assault with intent to commit murder. *People* v. *Lilley*, 43 Mich. 521, 5 N. W. 982; *Lott* v. *State*, 83 Miss. 609, 36 So. 11; *Henry* v. *State*, 18 Ohio 32; *State* v. *Godfrey*, 17 Or. 300, 20 Pac. 625, 11 Am.

St. Rep. 830; *Scott* v. *State,* 46 Tex. Cr. R. 315, 81 S. W. 952.

■■ And according to 30 C. J. 18, par. 161, this is particularly true where, as is the case in Arizona, one of the elements of an assault is that the person making it must have the ability at the time to inflict injury. That text is in this language: "Under a statute defining assault and making present ability to inflict injury an element thereof, it has been held that in order that there may be guilt of assault with intent to commit murder, accused must at the time have had the ability to execute the intent." In support of this proposition the following authorities, among others, are cited: *People* v. *Lee Kong,* 95 Cal. 666, 30 Pac. 800, 29 Am. St. Rep. 165, 17 L. R. A. 626; *Klein* v. *State,* 9 Ind. App. 365, 36 N. E. 763, 53 Am. St. Rep. 354; *Huie* v. *State,* 139 Ark. 241, 213 S. W. 380. Hence it follows that an information which merely charges a defendant with the commission of an assault with intent to commit murder charges also impliedly that he employed an instrument, weapon, or means, the use of which made it possible for him to take the life of the person assaulted, and a weapon or instrument that could be so employed would necessarily constitute means "calculated to inflict great bodily injury."

It follows, therefore, that there was no error in the instruction that "the charge of assault with intent to commit murder also includes the charge of an aggravated assault."

■ The defendant contends further that even though it be true that an aggravated assault is included in an assault with intent to commit murder, the court failed to instruct the jury as to the only element of aggravated assault under which he could have been legally convicted. It is stated in the brief of defend-

ant that all of section 43–603, *supra,* was read to the jury except subdivision 6, the only one applicable. The record discloses, however, that a proper instruction including this subdivision was requested and marked ''given'' by the judge on its margin and signed by him as required by statute. Section 21–1020, Arizona Code, 1939. This court is bound by the statement of the trial court that this instruction, which was not oral but written, was given, regardless of whether those taken and transcribed by the court reporter contain it or not, for as was said in *Red Rover Copper Co.* v. *Hillis,* 21 Ariz. 87, 185 Pac. 641, 643:

''The statute that requires the judge to write on the request the disposition he has made of the request is intended to provide for positive evidence of the court's action thereon. In case of a dispute as to whether or not the court acted on the request, the best evidence of such action is to be furnished by the face of the request. . . . ''

There are one or two other assignments but it is clear from an examination of them that the actions of the court or counsel upon which they are based, if error at all, was so slight that it was not prejudicial.

The judgment is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.