[Filed January 28, 1889.]

## THE STATE OF OREGON, RESPONDENT, *v.* B. A. GODFREY, APPELLANT.

DANGEROUS WEAPON — ASSAULT. — To point an unloaded gun at another, at a distance of from thirty to seventy yards, whereby such other is put in fear, and flees, is not an assault with a dangerous weapon.

ASSAULT. — To constitute an assault, there must be an intentional attempt by violence to do injury to the person of another, and such attempt must be coupled with the present ability to do such injury.

DANGEROUS WEAPON DEFINED. — A dangerous weapon is one by the use of which death or great bodily harm may be inflicted.

DANGEROUS WEAPON — UNLOADED GUN. — An unloaded gun in the hands of the defendant, four or five rods from the prosecuting witness, is not a dangerous weapon. Without the use of a dangerous weapon the defendant could not commit the crime charged, and such weapon was not dangerous in a legal sense, unless at the time of its use it was capable of producing death or great bodily harm.

LETHAL WEAPON — PROVINCE OF THE JURY. — Guns, swords, pistols, knives, and the like are lethal weapons, as a matter of law, when used within striking distance from the party assaulted; all others are lethal or not according to their capability of producing death or great bodily harm in the manner in which they are used, and of this the jury must be the judges: *accordingly held*, that in this case if the gun was loaded, it was a lethal weapon; if otherwise, it was not.

ASSAULT WITH A DANGEROUS WEAPON — INTENT. — To constitute the crime of being armed with a dangerous weapon, and assaulting another with such weapon, no specific intent to inflict death or great bodily harm is necessary. No other intent is necessary than that which is embraced in the act of being armed with a dangerous weapon, and making an assault upon another with such weapon.

APPEAL from Klamath County.

*W. M. Colvig*, District Attorney, for the state.

*Cogswell & Cogswell* and *J. W. Hamaker*, for Appellant.

STRAHAN, J. — The defendant was indicted by the grand jury of Klamath County for being armed with a dangerous weapon, to wit, a Winchester rifle, and assaulting H. J. Chrisman with such rifle.

The evidence of the assault introduced upon the trial tended to prove that the defendant, when not less than thirty yards nor more than seventy yards from said Chrisman, pointed a Winchester rifle at him and threatened to kill him if he did not turn back. His words were, "Turn back, you dirty son of a b———h, or I will kill you." The transcript shows there was no direct evidence that the gun was loaded, or that the defendant cocked it, or did anything except to point the gun at Chrisman, and use the language above quoted. There was evidence tending to prove that Chrisman was frightened and fled from the defendant.

At the conclusion of the evidence, the court, amongst other instructions, gave the jury the following: "If you believe from the evidence, beyond a reasonable doubt, that,

at the time and place as charged in the indictment, B. A.
Godfrey pointed a gun at Herbert J. Chrisman in a men-
acing and threatening manner, as if to shoot, and the said
Chrisman was then within carrying distance of said gun,
and that the said Chrisman, as a reasonable man, was,
under the circumstances as then presented to him, justi-
fied in believing that the defendant intended to shoot
him, and did so believe, and was in fear of being shot by
said defendant, and, under such fear, fled from said de-
fendant, without knowing whether said gun was loaded
or not, then the defendant is guilty, no matter whether
the gun was loaded or not."

The court further instructed the jury as follows: "If
you believe from the evidence, beyond a reasonable doubt,
that, at the time and place as charged in the indictment,
said Herbert J. Chrisman and another person were in a
cart or buggy together, and that said defendant, Godfrey,
pointed a loaded gun at both of them in a threatening
manner, and under the circumstances mentioned in the
last instruction (No. 1), within carrying distance of said
gun, then you must find the defendant guilty."

To the giving of each of these instructions the defend-
ant excepted.

The defendant asked the following instructions, all of
which were refused by the court, and separate exceptions
saved to the ruling in each case: —

"1. A dangerous weapon is one capable of producing
death or great bodily harm.

"2. An assault is an unlawful attempt, coupled with a
present ability, to commit a violent injury upon the per-
son of another.

"3. An unloaded gun at a distance of four or five rods
from the party alleged to have been assaulted is not a
dangerous weapon.

"4. Whether or not the defendant in this action was

at the time of this alleged assault armed with a dangerous weapon, is a question of fact which you are to determine from the evidence, and in doing so, you are to take into consideration all the circumstances,—whether or not the gun was loaded, the distance the parties were from each other, the manner of its use,—and unless you are satisfied, beyond a reasonable doubt, from all the circumstances in the case, that he was armed with a weapon which, at the distance the parties were from each other, was capable of producing death or great bodily injury, then you must acquit.

"5. One of the questions for you to determine is, whether the gun with which it is charged the defendant committed the assault was loaded; and unless it is established beyond a reasonable doubt that the gun was so loaded, you will have to find that it was not loaded; and should you find that the gun was not loaded, then you will have to decide from the evidence whether an unloaded gun, at the distance the defendant was from the prosecuting witness at the time of the alleged assault, was a dangerous weapon, and if not, then you must acquit."

The first instruction given by the court, to which an exception was taken in effect, told the jury that if the defendant pointed the gun at Chrisman, under the circumstances therein enumerated, the defendant was guilty, no matter whether the gun was loaded or not. This is equivalent to saying that it is a felonious assault to point an empty gun at another, whereby he is put in fear, and flees. Such an act, no doubt, deserves the severest reprehension, but unless it constitutes an assault, the conviction cannot be sustained, no difference what view we may take of the other questions presented.

Burrill's Law Dictionary defines an assault to be an unlawful setting upon one's person. (Finch's Law, b. 3, c. 9.) An intentional attempt by violence to do a corpo-

real injury to another. (Wharton's Crim. Law, 311; 1 Hill, 351.) An attempt or offer, with force or violence, to do a corporeal hurt to another, as by striking at him with or without a weapon, or presenting a gun, etc. Rapalje defines it thus: "An assault is: 1. An attempt unlawfully to apply an actual force, however small, to the person of another, directly or indirectly; 2. The act of using such a gesture towards another person as to give him reasonable grounds to believe that the person using the gesture meant to apply actual force to his person." (1 Law Dict., tit. Assault.) Any willful and unlawful attempt or offer with force to do a corporeal injury to another. (1 Abbott's Law Dict., tit. Assault, 90.)

But these definitions furnish no certain or satisfactory solution of the question, and if we look at the adjudged cases, they appear to be irreconcilable.

*Chapman* v. *State*, 78 Ala. 463, is a late and well-considered case holding that to present and aim an unloaded gun at a person within shooting distance, in such a manner as to terrify him, he not knowing that the gun is not loaded, will not support a conviction for a criminal assault, although it may support a civil action for damages. This case presents the leading authorities on both sides of this question, and sums up the result reached by the court thus: "The true test cannot be the mere tendency of an act to produce a breach of the peace; for opprobrious language has this tendency, and no words, however violent or abusive, can at common law constitute an assault. It is unquestionably true that an apparent attempt to do corporeal injury to another may often justify the latter in promptly resorting to measures of self-defense. But this is not because such apparent attempt is itself a breach of the peace; for it may be an act entirely innocent. It is rather because the person who supposes himself to be assaulted had a right to act upon appear-

ances when they create reasonable grounds from which to apprehend imminent peril. There can be no difference in reason between presenting an unloaded gun at an antagonist in an affray and presenting a walking-cane as if to shoot, providing he honestly believes, and from the circumstances has reasonable grounds to believe, that the cane was a loaded gun. Each act is a mere menace, the one equally with the other, and mere menaces, whether by words or acts, without intent or ability to injure, are not punishable crimes, although they may often constitute sufficient ground for a civil action for damages.

The test, morever, in criminal cases, cannot be the mere fact of unlawfully putting one in fear, or in creating alarm in the mind; for one may obviously be assaulted, although in complete ignorance of the fact, and therefore entirely free from alarm. (*People* v. *Lilly*, 43 Mich. 525; 1 Crim. Law Mag. 605.) And one may be put in fear under pretense of begging, as in *Tapline's Case*, occurring during the riots in London, decided in 1780, and reported in 2 East P. C. 712, and cited in many of the old authorities.

These views are sustained by *State* v. *Napper*, 6 Nev. 113; *Regina* v. *James*, 47 Eng. Com. L. 530; *Black* v. *Bernard*, 38 Eng. Com. L. 365; *People* v. *Lilly*, 43 Mich. 521; *Robinson* v. *State*, 31 Tex. 171; *Lawson* v. *State*, 30 Ala. 14; *McKay* v. *State*, 44 Tex. 43; 3 Greenl. Ev., sec. 61; *People* v. *Jacobs*, 29 Cal. 579. Numerous other cases to the same effect are carefully collated in 1 Am. & Eng. Ency. of Law, 815, 816.

I think these authorities clearly show that to constitute an assault there must be an intentional attempt to do injury to the person of another by violence, and that such attempt must be coupled with a present ability to do the injury attempted. It is equally manifest that the element of fear or apprehension on the part of the person against

XVII. OR.—20

whom the attempt is made cannot be controlling or in any way influence the conclusion, for the reason that such person may be assaulted and be wholly unconscious of the injury. I am therefore of the opinion that the first instruction given by the court was erroneous.

2. Turning now to the instructions asked on the part of the defendant, we are of the opinion that No. 1 ought to have been given. A dangerous weapon is a necessary element in the commission of the crime for which the defendant was indicted. Without it he could not be guilty of the felonious assault charged. The instructions asked briefly defined such weapon, and its refusal was error.

3. So in regard to instruction No. 2 asked by defendant, defining an assault. An unlawful attempt to do injury to the person of another, without the ability to accomplish it, would not constitute an assault, nor would the ability without the attempt be sufficient. Both elements must concur. This instruction, then, should also have been given.

4. Instruction No. 3 asked by the defendant should also have been given. Manifestly, an unloaded gun in the hands of the defendant four or five rods from Chrisman was a harmless implement, with which no personal injury could possibly have been inflicted upon Chrisman. Without the use of a dangerous weapon the defendant could not commit the crime charged, and the weapon was not dangerous in a legal sense, unless at the time of its use it was capable of producing death or great bodily harm.

5. Under the circumstances disclosed by this record, the fourth instruction asked by appellant contained a correct statement of the law, and should also have been given. Some weapons under particular circumstances are so clearly lethal that the court may declare them to be such as a matter of law. Of this class are guns,

swords, knives, pistols, and the like, when used within
striking distance from the victim; all others are lethal or
not according to their capability to produce death or great
bodily harm in the manner in which they are used, and
of this the jury must always be the judges. It is a ques-
tion of fact, the termination of which properly belongs to
them. In the case under consideration, the gun was a
lethal weapon if it was loaded, otherwise it was harmless.
It was therefore the peculiar and exclusive province of the
jury to say whether this was so or not, and the court erred
in so refusing to instruct them.

6. Instruction No. 5, also asked by the defendant, de-
pends upon the same principles as No. 4, and its refusal
was error, for the same reasons given in reference to No. 4.

7. The defendant also asked the court to give the jury
the following instruction, numbered 7: " Unless it is estab-
lished beyond a reasonable doubt that the defendant at
the time of the alleged assault intended to inflict death
or great bodily harm upon Chrisman, coupled with a pres-
ent ability to carry the same into effect, you must acquit."
This instruction was properly refused. No specific intent
is necessary to constitute the crime under this statute
other than such as may be embraced in the act of mak-
ing an assault with a dangerous weapon. This simply
embraces the intentional and unlawful use of a danger-
ous weapon, by means of which an assault is committed
with such weapon upon the person of another.

One or two other unimportant exceptions were taken,
but it is unnecessary to notice them, as every principle of
law involved in the case is disposed of by what is said on
the questions above suggested.

The judgment will be reversed, and a new trial had in
the court below.