STATE v. PETER W. REMPEL AND ANOTHER.

PETER W. REMPEL, APPELLANT.

SAME v. SAME.

JOHN REMPEL, APPELLANT.[1]

June 20, 1919.

Nos. 21,207, 21,208.

**Assault and battery — evidence.**

> Evidence that during an affray one of defendants started to draw a
> revolver from his pocket, but did not point it toward anyone or make
> any movement to use it against anyone, is not sufficient to sustain a con-
> viction of an assault with a weapon likely to produce grievous bodily
> harm.

Defendants were indicted by the grand jury of Watonwan county
charged with the crime of assault in the second degree, tried in the dis-
trict court for that county before Comstock, J., and a jury which re-
turned verdicts of guilty as charged in the indictment. From the judg-
ment sentencing each defendant to a fine of $1,000 and in default there-
of to imprisonment in the county jail of Blue Earth county until pay-
ment be made, not to exceed one year, defendants appealed. Reversed.

*C. J. Laurisch,* for appellants.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant
Attorney General, and *J. L. Lobben,* County Attorney, for respondent.

TAYLOR, C.

Defendants were convicted of an assault in the second degree and
appealed from the judgment.

The indictment charges that the defendants "did wrongfully, unlaw-
fully, wilfully and feloniously assault T. P. Trowbridge with a loaded
revolver, a weapon likely to produce grievous bodily harm."

Trowbridge and one H. H. Klein were guests at the hotel in the vil-
lage of Butterfield in Watonwan county on Sunday, July 21, 1918. The

1Reported in 172 N. W. 920.

residence of the defendant Peter Rempel is on the lot adjoining the hotel. While Trowbridge and Klein were at breakfast Sunday morning, they overheard the conversation between defendant Peter Rempel and one Bernhard Rempel, who were seated on a bench on the lawn some 10 or 15 feet from the open dining-room window. Trowbridge called to them through the open window to cut out their pro-German talk, which was followed by further remarks back and forth. The testimony concerning what took place later is radically conflicting in many respects, but the jury having found the defendants guilty, we must take the testimony of the witnesses for the prosecution as correctly stating the facts.

About noon, while Trowbridge and Klein were seated in the hotel office waiting for the dining room to open, defendant Peter Rempel entered the office and stepping up to Trowbridge asked: "Did you say I was a pro-German?" To which Trowbridge answered: "I didn't say you were a pro-German; I asked you to cut out your pro-German talk or move." After some further words had passed between them Klein spoke up and said: "Judging from the conversation that I overheard this morning, you are a pro-German." At this Peter applied vile and opprobrious epithets to Klein, struck at him, was struck by Klein and they clinched. About this time defendant John Rempel entered the room and started to help Peter. Trowbridge caught John in such a manner as to lock his arms behind his back, pushed him against the counter and held him there. John had a revolver in his hip pocket, which he says he had carried for several weeks, and this is not contradicted. While Trowbridge was holding him against the counter, John tried to get this revolver, but Trowbridge prevented him from doing so. About this time a stranger separated Peter and Klein, and Peter started for Trowbridge, who released John to meet Peter's attack. On being released, John grasped his revolver and drew it partly out of his pocket, but was seized by Klein, and, after a short struggle for possession of the revolver, Klein told him to put it back in his pocket and he did so. One or two further attempts to draw the revolver were also stopped by Klein. The parties then quieted down and the defendants left.

The defendants both emphatically deny that John ever made any attempt to draw his revolver. During the affray, the defendants used vile language and made vicious threats. Were it not for these threats, it

would hardly be claimed that they had made an assault with a dangerous weapon. No claim is made that John made any move to draw his revolver until after he had been seized by Trowbridge, and was being held in such a manner that he could not use his hands or arms. Unable to do anything else, he tried to reach his weapon. When released, he started to draw it from his pocket, but no one claims that he pointed it toward any one, or made any movement to use it against Trowbridge or anyone else. The testimony of Klein and Trowbridge, the only witnesses who testify that he attempted to draw the revolver, does not show that he ever had it entirely out of his pocket, and it was put back in his pocket and remained there. If he had pointed the revolver toward Trowbridge or made a movement to use it against Trowbridge, this might be an act which would constitute an assault with it, but the evidence goes no further than to show that he made an attempt to draw it without getting it out where he could use it.

While the evidence would sustain a conviction of an assault in the third degree, we are of opinion that it does not justify a conviction of an assault in the second degree. 2 Bishop, Crim. Law, § 31; Tarpley v. People, 42 Ill. 340; Tarver v. State, 43 Ala. 354; Flournoy v. State, 25 Tex. App. 244, 7 S. W. 865; State v. Godfrey, 17 Ore. 300, 20 Pac. 625, 11 Am. St. 830; Penny v. State, 114 Ga. 77, 39 S. E. 871, 13 Am. Cr. 77.

Both convictions are reversed.