Argued October 14, affirmed November 12, 1959
# STATE OF OREGON *v.* WILSON
346 P. 2d 115

576

*Gregory L. Bounds,* Portland, argued the cause and submitted a brief for appellant.

*Herbert A. Perry,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was Charles E. Raymond, District Attorney, Portland.

Before McAllister, Chief Justice, and Sloan, O'Connell and King, Justices.

O'CONNELL, J.

The defendant appeals from a judgment of the circuit court for Multnomah county entered on a verdict pronouncing him guilty of the crime of attempted assault with a dangerous weapon under Count I of the indictment, and the crime of assault with a dangerous weapon under Count II of the indictment. The essential parts of the indictment are as follows:

### "COUNT I.

"The said Harvey Raymond Wilson on the 12th day of September, A.D. 1957, in the County of Multnomah and State of Oregon, then and there being and then and there being armed with a dangerous weapon, to-wit: a loaded 12-guage Stevens shotgun, model 620, did then and there unlawfully and feloniously attempt to assault one Frances Ora Wilson, by then and there attempting to shoot the said Frances Ora Wilson with such dangerous weapon, but did fail and was prevented and intercepted in the perpetration of said crime of Assault With a Dangerous Weapon, said act being contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

### "COUNT II.

"The said Harvey Raymond Wilson did, as a part of the same act and transaction alleged in Count I, on the 12th day of September, 1957, in the County of Multnomah and the State of Oregon, then and there being, and then and there being armed with a dangerous weapon to-wit: a loaded 12-guage Stevens shotgun, model 620, did then and there unlawfully and feloniously assault one Vivian Smith by then and there threatening

the said Vivian Smith with such weapon and pointing the said shotgun at and toward the said Vivian Smith, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The following statement of facts set out in plaintiff's brief adequately describes the circumstances under which the alleged crimes were committed. "On the afternoon of September 12, 1957, the defendant, Harvey Raymond Wilson, went unarmed to the laundry room of the New Heathman Hotel in Portland, Oregon, where his wife, Frances Ora Wilson, from whom he was separated, was employed. At that time a half dozen or more women, including defendant's wife and a Vivian Smith, were working in the laundry room. Defendant approached his wife. (He had been in the same laundry room the previous Saturday and had called her a 'yellow bellied son of a bitch' and in addition had said to her, 'I'll give you just twenty-four hours to live.') This time he stated to his wife: 'This is it.' Whereupon she ran from the room to an adjoining office where she started to call the police on a telephone. However, the defendant, who had followed her into the room, took the phone from her, tore it loose from the wall and threw it at her. She ducked and the phone hit another woman named Goldie Reed, a co-worker of defendant's wife. Defendant's wife then ran out of that office into another room where she did call the police on another phone.

"Meanwhile the defendant went outside the hotel to where his car was parked nearby and got from it a 12-guage shotgun which was loaded with three shells. He then returned to the laundry room, having only been gone approximately three or four minutes. As he approached the laundry room, with the loaded gun

held in a position to shoot directly in front of him, he was walking down a hall which had an open doorway on his right approximately ten feet ahead of him. Almost directly across the hall from this open doorway into the laundry room was another doorway which led into the office where his wife was. At this very time as the defendant was approximately ten feet up the hall from this doorway to the office, his wife started to come out of that doorway into the hall. She then saw the defendant who was also seen at the same time by a Grace Scebeta, another co-worker of defendant's wife. Miss Scebeta immediately pushed defendant's wife back into the office. The door was quickly shut as was another door leading into the office which now had in it defendant's wife, Grace Scebeta and Goldie Reed.

"Defendant meanwhile continued walking down the hall until he came to the doorway of the laundry room. He then entered the laundry room still carrying the loaded shotgun, where he confronted Vivian Smith and Helen Robbins, who also worked in the laundry room. Miss Robbins is a deaf mute. While standing not more than a couple of feet away from these two women, the defendant said to them, 'Don't move anyone or I'll shoot you.' Shortly after that the defendant turned around and walked away. As he was leaving the building he was apprehended by a police officer who was sent to the hotel as the result of the phone call to the police made by defendant's wife."

The crime of assault with a dangerous weapon is defined in ORS 163.250 as follows:

"Any person, who is armed with a dangerous weapon and assaults another with such weapon, shall be punished upon conviction by imprison-

ment in the penitentiary for not more than 10 years, or by imprisonment in the county jail not less than one month nor more than one year, or by a fine of not less than $100 nor more than $1,000."

There is no statute dealing specifically with an attempt to commit assault with a dangerous weapon. The state relies upon the general attempt statute, ORS 161.090, which reads in part as follows:

"Any person who attempts to commit a crime, and in the attempt does any act towards the commission of the crime but fails or is prevented or intercepted in the perpetration thereof, shall be punished upon conviction, when no other provision is made by law for the punishment of such attempt, as follows: * * *"

The defendant attacks Count I of the indictment on the ground that it does not state a crime under the laws of this state. Defendant argues that there is no such crime as an attempted assault with a dangerous weapon. In stating his grounds for objecting to the introduction of evidence in proof of the first count counsel for defendant said "* * * it is the contention of the defendant that there is no such thing as an attempted assault; it is no more than an attempt to inflict an injury or battery, so if a person attempts to assault one then he lacks the attempt to commit the battery." His reasoning is further spelled out in his brief as follows: "An assault is an attempt within itself and there must be some act done towards the commission of battery which is intercepted and prevented * * *. An attempt must include, except for consummation, all essential elements of the crime intended * * *. Thereby, one committing an assault must have intent to commit a battery. If then, there is such a crime as attempted assault, the one so

attempting must have intent to commit an assault. Does he then intend to commit a battery?" To answer this rhetorical question defendant relies upon the following language in *Wilson v. State,* 53 Ga 205, 206 (1874):

"* * * Plainly and in terms, they say they find him guilty of attempt to make an assault. The question is, can any judgment be entered upon such a verdict? Is it a legal verdict? Is there any such crime? The Code, section 4357, defines an assault to be 'an attempt to commit a violent injury on the person of another.' Under section 4712, to make out an attempt to commit a crime it must appear that the accused has done some act towards the commission of it, and either fail in the perpetration thereof, or be prevented or intercepted in executing the same. As an assault is itself an attempt to commit a crime, an attempt to make an assault can only be an attempt to attempt to do it, or to state the matter still more definitely, it is to do any act towards doing an act towards the commission of the offense. This is simply absurd. As soon as any act is done towards committing a violent injury on the person of another, the party doing the act is guilty of an assault, and he is not guilty until he has done the act. Yet it is claimed that he may be guilty of an attempt to make an assault, when, under the law, he must do an act before the attempt is complete. The refinement and metaphysical accumen that can see a tangible idea in the words an attempt to attempt to act is too great for practical use. It is like conceiving of the beginning of eternity or the starting place of infinity."

The charge that an attempt to attempt to do an act is beyond understanding, seems at first blush to be justified. It could be interpreted to be the equivalent of a statement that one is guilty of a crime if he proceeds to act in such a way that, if not interrupted,

his conduct would result in the commission of an act which if not interrupted would result in a substantive crime.

If we should view criminal assault as a separate substantive crime and not as an attempted battery, the foregoing objection would disappear. If we use the words "assault" and "battery" to express distinct ideas, then criminal assault can mean either (1) an act which causes another to be put in reasonable apprehension of corporal injury and the act is done with the intent of causing either the apprehension or the corporal injury, or (2) an act intended to cause corporal injury by one who has the present ability to carry out such intent. Under the first meaning of assault a crime is committed if the victim is put in apprehension of injury whether there is any actual intent to injure or not. Thus, if the defendant should point an unloaded gun intending only to subject his victim to the apprehension of corporal injury a crime would be committed. The crime is not defined in terms of an attempted battery but as a crime complete in itself. So viewed, there is no logical difficulty in describing as a criminal attempt the acts leading up to the conduct by which the defendant actually places his victim in apprehension. As pointed out earlier, attempt to commit an assault as defined under the second definition given above has, however, been regarded in some circles as involving the absurdity of recognizing an attempt to commit an attempt to commit a crime.

Before dealing with this criticism we shall first consider the nature of the crime of assault as it has been defined in Oregon. We have no statute defining the crime of assault alone. Aggravated assaults of various kinds are provided for (e.g., ORS 163.240 to

163.280 inclusive) but these and other statutes dealing with criminal assaults do not purport to define assault itself. It is quite evident from the language used in some of these statutes that "assault" is sometimes used to mean "battery" and sometimes used to describe conduct short of battery. (See, for example, ORS 162.390, 162.400, 162.410.) Sometimes "assault" is contrasted with "assault and battery." (See, for example, ORS 163.255, 163.260.) Our case law keeps the idea of assault distinct from the idea of battery, but the definitions of assault are not always consistent. We find assault defined in the first sense set out above, i.e., an act which reasonably puts one in fear of corporal injury. Thus in *State of Oregon v. McLennen,* 16 Or 59, 60, 16 P 879 (1888) the court said:

> "* * * 'An assault is any unlawful physical force, partly or fully put in motion, creating a reasonable apprehension of immediate physical injury to a human being, as raising a cane to strike him, pointing in a threatening manner a loaded gun at him, and the like.' (2 Bishop on Criminal Law, § 23.) Or an assault is thus more tersely defined by Wharton: 'An assault is an intentional attempt to do an injury to another.' (2 Wharton's Criminal Law, § 1241.)"

The element of apprehension is also included in the definition of assault set out in *State v. Linville,* 127 Or 565, 572, 273 P 338 (1928). There the court said:

> "An intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt, if not prevented, constitutes an assault."

The bulk of the Oregon cases defining criminal assault, however, do so in terms of attempted battery and limit the crime to acts which are intended to cause corporal injury under circumstances in which the actor has the present ability to carry out his intent. Typical of such definitions is that found in *Smallman v. Gladden,* 206 Or 262, 272, 291 P2d 749 (1956) where the court said:

> "* * * An assault is an intentional attempt by one person by force or violence to do an injury to the person of another, coupled with present ability to carry the intention into effect. *State v. Selby,* 73 Or 378, 144 P 657; *State v. Cancelmo,* 86 Or 379, 168 P 721; *State v. Linville,* 127 Or 565, 273 P 338; *State v. Olsen,* 138 Or 666, 7 P2d 792; *State v. Carroll,* 155 Or 85, 62 P2d 830."

Under the latter definition, apprehension of injury on the part of the victim need not be shown to make out the crime. Further, it seems clear that an act done with the intention to place one in apprehension of injury only and not to inflict corporal injury would not constitute the crime of assault in this state. And too, according to the definition, an act done with the intention to inflict corporal injury, but where the actor did not have the present ability to inflict corporal injury would not be a criminal assault. *State v. Godfrey,* 17 Or 300, 20 P 625 (1889). The manner in which our cases have defined assault, describing conduct which is designed to produce a criminal battery but for some reason falls short of the final harm, lends support to the idea that the crime is no more than an attempt to commit a crime and that it is not a crime standing upon its own separate ground. At this point two questions present themselves. First, is it accurate to regard criminal assault as an attempt in the sense that the concept is used in the law of

criminal attempt, or to put it differently, does the word "attempt" as used in the definition of assault convey the same meaning as the word attempt in the law of criminal attempt generally? The second question is: Assume that we are forced to deal with an attempt to attempt to commit a battery, is there any reason why we cannot and should not bring such conduct within the law of criminal attempt generally?

Considering now the first question, it seems evident that a definition which describes conduct in terms of "present ability" to consummate a further act adds something to the idea of attempt as it is used to describe the steps leading up to a final substantive crime. One may be guilty of an attempt to commit a crime under circumstances where there is no *present* ability to consummate the crime attempted. This suggests that the word "attempt" as used to describe assault is not meant to describe the preparatory stages pointing toward a battery but to contrast assault with battery by speaking of the former as something less than the latter.

When assault is defined in terms of the victim's apprehension of injury, as many courts do, assault is viewed as a self-contained criminal act rather than as attempted battery, and yet the definition carries with it the idea that the conduct which causes the apprehension may be, and often is, a step toward the ultimate act of inflicting corporal injury. The fact that the preliminary conduct is described with reference to an act which ordinarily follows, or which is intended to follow, does not preclude us from considering the preliminary conduct as a separate crime distinct from criminal battery, and this is true whether we define assault in terms of the purpose and ability to commit a battery or in terms of putting

the victim in fear of corporal injury. Defined either way, the conduct of the actor has advanced to such a stage that his propinquity to the victim's person is in itself a harm either because it generates fear in the victim under one definition, or exposes him to imminent danger of physical injury under the other. That distinct harm can be differentiated from the harm which the law sees at the point where the actor has not yet come upon the scene but has gone far enough to move past the mere preparation phase and into the stage of attempt. Cf Hall, Principles of Criminal Law (1947), ch 4. See Note: Is Criminal Assault A Separate Substantive Crime Or Is It An Attempted Battery?, 33 Ky L J 189 (1945). We are of the opinion that criminal assault, even as defined by this court, should be regarded as a distinct crime rather than as an uncompleted battery.

If we should regard assault as an attempted battery, is it reasonable to recognize the crime of attempted assault? It has been categorically asserted that there can be no attempt to commit a crime which is itself merely an attempt. 1 Wharton, Criminal Law & Procedure (Anderson ed) § 72, p 154; 1 Burdick, Law of Crime § 135, p 176 (1946); *State v. Sales*, 2 Nev 268 (1866); *Wiseman v. Commonwealth*, 143 Va 631, 130 SE 249 (1925), cf., *State v. Underwood*, 79 Or 338, 155 P 194 (1916) (suggesting that a charge that defendant was guilty of an attempt to solicit is an "absurdity.") Upon the basis of this premise it is said that there can be no such offense as an attempted assault. 1 Wharton, op cit supra, § 72 at 154, states that "as an assault is an attempt to commit a battery there can be no attempt to commit an assault." The same idea is found in Clark &

Marshall, Crimes (6th ed) § 4.07, p 218, where it is said:

> "Since a simple assault is nothing more than attempt to commit a battery, and aggravated assaults are nothing more than attempts to commit murder, rape, or robbery, an attempt to commit an assault, whether simple or aggravated is not a crime."

*People v. Stouter,* 142 Cal 146, 75 P 780 (1904); *Wilson v. State,* 53 Ga 205 (1874); *White v. State,* 22 Tex 608 (1858). Similar expressions can be found elsewhere. *Brown v. State,* 7 Tex Ct App R 569 (1880); 1 Burdick, Law of Crime, § 135, p 176 (1946). In none of these sources is it explained why this conclusion is inevitable. It appears to be assumed that logic permits no other conclusion. But is that so? Thurman Arnold, in an article in 40 Yale L J 53, 65 (1930) answers as follows:

> "* * * [It is said that] there can be no attempt at a direct attempt. But the query immediately arises, Why not? We do not punish attempts at ordinary assaults which carry light penalties. But suppose the accused is guilty of conduct tending toward an aggravated assault but which does not seem to require the heavier penalty. The court is confronted with the alternative of either discharging the accused or modifying the penalty to make it more nearly fit his conduct. An easy way to accomplish this is by making attempts at aggravated assaults punishable, and this is frequently done. It is academic to call such cases 'wrong' because assault is in the nature of an attempt and hence cannot be attempted, particularly when a common sense result is reached. In short the generalization that there can be no attempt at a crime in the nature of an attempt tells us nothing and tends merely to divert the court's mind from the real issue."

■■ We agree with the foregoing analysis. The mere fact that assault is viewed as preceding a battery should not preclude us from drawing a line on one side of which we require the present ability to inflict corporal injury, denominating this an assault, and on the other side conduct which falls short of a present ability, yet so advanced toward the assault that it is more than mere preparation and which we denominate an attempt. This is exactly the rationale found in *People v. O'Connell,* 60 Hun 109, 14 NYS 485 (1891) where an attempt to commit an assault was recognized as an indictable offense. There the defendant pleaded guilty to a charge of an attempt to commit a criminal assault. On appeal it was urged that there could be no such crime as an attempt to commit an assault. The court said:

> "* * * it was essential to the crime as it was charged in the indictment that the defendant should have struck at his adversary with the axe within reaching distance, for, if he did not, there would be manifestly no completed assault. Whether the assault charged be made by means of a fire-arm or any other deadly weapon, it is necessary for the creation of the crime that the person intended to be assailed shall not be so far from the intended assailant as to be beyond all possibility of injury from him. But that is not an essential circumstance in the case of an attempt, for the assailant may load a fire-arm, and then start towards the person to be assailed, in order to attain reaching distance of him; or, when the assault is intended to be made with an axe,—which is the weapon mentioned in the indictment, —the accused may obtain and raise it, intending to strike with it, when too far away from the person intended to be struck, and then approach towards that person, and be intercepted before he can reach a position of danger to him, which would be an attempt to commit the crime charged.

Each act would be an attempt to commit the crime charged, for 'an act done with intent to commit a crime, and tending, but failing, to effect its commission, is an attempt to commit that crime.' Pen. Code, § 34. For a person to provide an axe, with which he intends to kill another, and afterwards approaches towards him to make that use of it, but is prevented from doing so by the flight of the other, or by being himself disarmed or otherwise prevented from reaching his intended victim, are acts tending to effect the commission of the crime, within the language of this section of the Code. They are steps in the progress of the crime, but rendered unavailing by others frustrating and defeating the execution of the intention upon which the person himself had commenced directly to act. The case thus presented is more than a mere intention, which would not be punishable. *McDade v. People,* 29 Mich. 50; *People v. Murray,* 14 Cal. 159. It would be an intention coupled with acts appropriate, although not insuring its execution; and that would be an attempt to perpetrate the crime intended to be committed, for that may be affirmed of some physical act sufficiently proximate to the result to be caused as to stand either as the first or some subsequent step in the actual endeavor to bring about or accomplish the result." *People v. O'Connel,* 14 NYS at 486.

The rationale of the case is more directly stated in the following language:

"* * * To make the assault itself it was necessary that he should be so near as to be able to strike him, and should attempt to do so. To make an attempt to assault him required no more than that he should arm himself with the axe, and endeavor to place himself in the position to use it by executing his intention to kill. There is a clear distinction between these cases. The first would be the crime itself, the other an attempt to commit it; and that would bring the defendant within the range of the indictment, which included

all attempts to commit the assault." *People v. O'Connell,* 14 NYS at 486, 487.

We think that the analysis in *People v. O'Connell,* supra, is applicable to the present case. The acts of the defendant after obtaining the gun from his automobile may not have been sufficient to establish that he had the present ability to inflict corporal injury upon his wife who was behind a locked door, but he had proceeded far beyond the stage of preparation and it is reasonable to treat his conduct as an attempt within the meaning of ORS 161.090. It is the function of the law of criminal attempt to permit the courts to adjust the penalty in cases where the conduct falls short of a completed crime. 40 Yale L J 53, 74, 75. Our legislature has provided that assault with a dangerous weapon is a crime. ORS 161.090 permits the courts of this state to treat conduct which is short of statutory crimes as a crime, and we regard an attempt to commit an assault as within the intendment of this statute. Support for our position recognizing the crime of attempted assault can be found in other jurisdictions. *State v. Herron,* 19 Mont 230, 29 P 819 (1892); *Rex v. Menary,* 23 Ont L R 323, 18 Ont W R 379 (1911). The contrary view is little more than a barren logical construction. The recognition of the crime of attempted assault where assault is viewed as a separate substantive crime rather than as an attempted battery indicates that there is no policy against punishing a person who engages in conduct short of an assault. No different policy considerations are presented merely because we view. assault as an uncompleted battery rather than as a distinct crime.

Defendant contends that if ORS 161.090 embraces an attempt to commit an assault the statute is

unconstitutional in that it does not sufficiently define the criminal acts which would constitute a violation of the statute. But this is no more than a criticism of the entire law of criminal attempt which admittedly is vague in that each case must be decided upon its own facts in determining whether the defendant's conduct has proceeded far enough toward the consummation of the crime to warrant punishment. The problem confronting the courts in drawing the line in an attempted assault case is no more difficult than it is where other attempted crimes are involved.

The defendant's wife was permitted to testify against him. Objection was made by defendant's counsel at the trial "on the ground and for the reason that Count I fails to state a crime and this woman does not have the consent of the defendant to testify." Defendant assigns as error the trial court's action in overruling this objection and permitting the witness to testify. Since we have decided that Count I does state a crime the ground for the objection is removed insofar as it relates to Count I. One spouse may testify against the other "in all cases of personal violence upon either by the other." ORS 139.320. Defendant argues, however, that the wife was permitted to testify as to matters contained in Count II, which did not involve an aggression against her and, therefore, was not within the statutory exception.

The testimony of defendant's wife related the entire incident constituting the alleged crime. No effort was made in eliciting the testimony to relate it specifically and separately to Count I and Count II, and we are not told on appeal what part of the testimony is objectionable as it relates to Count II if Count I states a crime. From our reading of the

transcript we could find no testimony given by the defendant's wife which related exclusively to the charge made in Count II. Therefore, we hold that this assignment of error was not well taken.

The judgment of the lower court is affirmed.

McAllister, C. J., dissents.