Argued and submitted November 3, 1983, affirmed April 3, 1984

STATE OF OREGON,
*Respondent on Review,*

*v.*

JUAN SANTOS GARCIAS,
*Petitioner on Review,*

(CA A26238)


STATE OF OREGON,
*Respondent on Review,*

*v.*

HARVEY CHICO MULLINS,
*Petitioner on Review,*

(CA A26286)


STATE OF OREGON,
*Respondent on Review,*

*v.*

CASSANDRA DIANE GRIFFITH,
*Petitioner on Review,*

(CA A26387)


STATE OF OREGON,
*Respondent on Review,*

*v.*

JUSTIN KELLY COMER,
*Petitioner on Review,*

(CA A26285)


STATE OF OREGON,
*Respondent on Review,*

*v.*

DIMAS FRANKLIN CHAVEZ,
*Petitioner on Review.*

(CA A26283, A26284)
(SC 29504)

STATE OF OREGON,
*Respondent on Review,*

*v.*

ASENCION SANDOVAL,
*Petitioner on Review,*

(CA A27666)

STATE OF OREGON,
*Respondent on Review,*

*v.*

DAVID ALAN FOX,
*Petitioner on Review,*

(CA A27924)

STATE OF OREGON,
*Respondent on Review,*

*v.*

LEON VINCENT GRACZYK,
*Petitioner on Review.*

(CA A27979)
(SC 29844)

STATE OF OREGON,
*Respondent on Review,*

*v.*

LEON VINCENT GRACZYK,
*Petitioner on Review.*

(CA A27262, A27263)
(SC 29843)

679 P2d 1354

Thomas L. Fagan, Staff Attorney, Public Defender Services of Lane County, Inc., Eugene, argued the cause for petitioners on review. With him on the briefs was Robert J. Larson, Director, Public Defender Services of Lane County, Inc., Eugene.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the

briefs were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

ROBERTS, J.

## ROBERTS, J.

In these consolidated cases, defendants challenge the constitutionality of the menacing statute, ORS 163.190(1), enacted in 1971. That statute provides:

"A person commits the crime of menacing if by word or conduct he intentionally attempts to place another person in fear of imminent serious physical injury."

We believe the statute can best be understood in relation to the development of criminal assault in this state.

Prior to 1971, the assault statutes had remained substantively the same since their enactment in 1843. Compare General Laws of Oregon §§ 531-537 (Deady & Lane 1874) with ORS 163.240-163.290 (1969). The statutes contained gradations of the crime of assault but no definition. The following statutory language was typical:

"Any person who assaults, or assaults and beats another with a cowhide, whip, stick or like thing, having at the time in his possession a pistol, dirk or other deadly weapon, with intent to intimidate and prevent such other person from resisting or defending himself, shall be punished upon conviction by imprisonment in the penitentiary for not more than 10 years." ORS 163.240 (1969); *see also* General Laws of Oregon § 531 (Deady & Lane 1874).

What conduct fell within the definition of assault was not always clear. At early common law, assault encompassed two separate concepts, the crime of attempted battery and the civil action for intentionally placing another in apprehension of an immediate battery. R. Perkins, *Criminal Law* 117 (2d ed 1969). Perkins indicates that the tort concept of assault, apprehension of an immediate battery, was early incorporated into the criminal assault statutes of the various states. *Id.*[1] There appears to have been some early ambivalence in Oregon whether the criminal assault statutes included the tort based

---

[1] Perkins traces the incorporation of the tort concept of assault into the criminal definition to a statement by East in 1 East, Pleas of the Crown 406 (1803). Perkins suggests that the addition of the tort theory may have been inadvertent. R. Perkins, Criminal Law 120 (2nd ed 1969). It appears nonetheless to have been adopted readily. Perkins at 117 and sources cited at 117, note 25.

meaning,[2] and a degree of confusion persisted in this regard at the time of the 1971 revision of the criminal code.[3] Nonetheless, the definition of criminal assault had solidified sufficiently so that, at the time of the criminal code revisions, it could be summarized as including both "an act which reasonably puts one in fear of corporal injury" and "an act intended to cause corporal injury by one who has the present ability to carry out such intent." Commentary to Proposed Oregon Criminal Code 95, § 94 (1970).

■　　Among other amendments to the criminal code in 1971, the Oregon legislature defined the crime of assault. Assault now occurs when one intentionally, or with another specified mental state, causes some degree of physical injury to another. The gravity of the offense is gauged according to

---

[2] In *State v. McLennen*, 16 Or 59, 60, 16 P 879 (1888), our definition of assault included "any unlawful physical force, partly or fully put in motion, creating a reasonable apprehension of immediate physical injury to a human being, as raising a cane to strike him, pointing in a threatening manner a loaded gun at him, and the like." Quoting from 2 Bishop on Criminal Law § 23. But shortly thereafter *State v. Godfrey*, 17 Or 300, 20 P 625 (1889) appears to reject the tort based theory of assault, causing apprehension, when it held that pointing an unloaded gun could not constitute criminal assault because defendant had no present ability to inflict a battery. The court stated:

"There can be no difference in reason between presenting an unloaded gun at an antagonist in an affray and presenting a walking-cane as if to shoot, providing he honestly believes, and from the circumstances has reasonable grounds to believe, that the cane was a loaded gun. Each act is a mere menace, the one equally with the other, and mere menaces, whether by words or acts, without intent or ability to injure, are not punishable crimes, although they may often constitute sufficient ground for a civil action for damages.

"The test, moreover, in criminal cases, cannot be the mere fact of unlawfully putting one in fear, or in creating alarm in the mind * * *." 17 Or at 305.

In *State v. Wilson*, 218 Or 575, 346 P2d 115 (1959), this court addressed the inconsistent definitions of assault in a challenge to a conviction for attempted assault. The court did not reject the tort meaning of assault but after reviewing the caselaw noted that "an act done with the intention to place one in apprehension of injury only and not to inflict corporal injury would not constitute the crime of assault in this state." 218 Or at 584. *Rose v. Gladden*, 241 Or 202, 205, 405 P2d 543 (1965) throws doubt on this conclusion with its interpretation of *Godfrey*. *Rose* reads *Godfrey* as involving a failure of proof of defendant's intent to place the victim in fear, rather than as a rejection of the tort definition of assault. 241 Or at 205.

[3] The confusion centered on what harm the defendant must intend to cause. It was certain that an intent to inflict physical injury was required for the crime of assault. It was not so clear that an intent to cause apprehension could support an assault charge. The victim's apprehension remained an element of the crime, but had significance apparently only to the imminence of the threatened injury. *See State v. Linville*, 127 Or 565, 572, 273 P 338 (1928); *State v. Wilson*, 218 Or 575, 346 P2d 115 (1959), as discussed in Commentary to Proposed Oregon Criminal Code, 95, § 94 (1970).

culpability, seriousness of injury inflicted or intended, and the means used to inflict injury. As thus defined, assault includes only acts performed with the intent to cause injury and does not encompass conduct intended to create apprehension, but not necessarily injury. The alternative meaning of assault was not abandoned, however. "[T]he tort law derived concept of 'intentional creation of the apprehension of receiving a battery' * * * will be retained under the proposed law as the newly designated offense of menacing." *Id.* at 94.

As already quoted above, the menacing statute, ORS 163.190(1), provides:

> "A person commits the crime of menacing if by word or conduct he intentionally attempts to place another person in fear of imminent serious physical injury."

The legislature could have included the offense in the general assault provisions, as it appears in the Model Penal Code § 211.1(1)(c) from which the statute is, in part, derived.[4] It chose instead to create a separate offense similar to that found in the New York Penal Law § 120.15 (McKinney 1975).[5] These laws define menacing as intentionally placing or attempting to place another person in fear of imminent serious physical or bodily injury. In New York and as it appears in the Model Penal Code, the offense is committed "by physical menace." In Oregon, the offense is defined only in terms of attempt and may occur "by word or conduct."[6]

---

[4] Model Penal Code § 211.1 provides:

"(1) *Simple Assault.* A person is guilty of assault if he:

"(a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or

"(b) negligently causes bodily injury to another with a deadly weapon; or

"(c) attempts by physical menace to put another in fear of imminent serious bodily injury.

"* * * * *"

[5] New York Penal Code § 120.15 (McKinney 1975) provides:

"A person is guilty of menacing when, by physical menace, he intentionally places or attempts to place another person in fear of imminent serious physical injury.

"* * * * *"

[6] Among the states that have adopted a separate menacing statute, the crime may be committed in a number of ways: "by physical action," Ala Code § 13A-6-23 (1983);

The question in this case is whether the menacing statute on its face violates article I, section 8 of the Oregon Constitution as an outright prohibition on speech, or, if not, whether the communications within its intended reach are either too vaguely defined or such as could not be proscribed by the criminal law.

The district court judges who considered these cases dismissed the complaints finding the menacing statute unconstitutionally overbroad in reliance on *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982), and not susceptible to a narrowing construction that would withstand a constitutional challenge. They also found it unconstitutionally vague. The Court of Appeals reversed. We affirm the Court of Appeals.

Article I, section 8 provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; * * *."

In *State v. Robertson, supra,* we stated that this provision

"forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." 293 Or at 412.

In *Robertson* we also said that an offense can include the use of words, but "laws must focus on proscribing the pursuit or accomplishment of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end." 293 Or at 416-17.

Before we address defendants' claims of overbreadth and vagueness we must consider first whether this law validly could be enacted at all in light of the constitution's prohibition

---

"by any threat or physical action," Colo Rev Stat § 18-3-206 (1978); In Connecticut it is called threatening and is committed "by physical threat," Conn Gen Stat Ann § 53a-62 (West 1972); "by some movement of his body or any instrument," Del Code Ann tit. 11 § 602 (1979); Kentucky does not specify by what means menacing occurs, Ken Rev Stat § 508.050 (1975); the crime in Maine is called criminal threatening without specification how it is committed, Me Rev Stat Ann tit 17-A § 209 (1983); New Hampshire proscribes criminal threatening "by physical conduct," N.H. Rev Stat Ann § 631.4 (1974); North Dakota does not specify how menacing occurs, N.D. Cent Code § 12.1-17-05 (1976); Ohio statutes include the crimes of menacing and aggravated menacing; the means are not specified, Ohio Rev Code Ann §§ 2903.21, 2903.22 (Page 1982).

against "law[s] * * * restricting the right to speak * * * freely on any subject whatever."

The menacing statute proscribes by its terms certain communications, those intended as attempts to place another person in fear of imminent serious physical injury. Causing apprehension by threats and gestures indicative of imminent violence was punishable in many states as criminal assault at the time our guarantees of freedom of expression were adopted. R. Perkins, *Criminal Law* 117 (2d ed 1969). Unlike other conventional crimes of the same era which were made out by use of words alone, such as perjury and solicitation, the crime of assault required more than verbal communication. *People v. Lilley,* 43 Mich 521, 525 (1880), Perkins, *Criminal Law* at 132, citing Restatement of Torts § 31 comment a (1934). This was because the law was intended to prevent conduct likely to engender a breach of the peace. Perkins, *Id.* at 117. Words unaccompanied by some menacing act or gesture were considered insufficiently threatening of an imminent battery to provoke in the victim a defensive or retaliatory violent response. Perkins, *Id.* at 132. While words could lend to actions such a meaning as would make them amount to assault, they were in themselves insufficient to constitute the crime. In its conventional guise, assault did not prohibit speech alone but rather forbade the communication of threats accompanied by conduct which together caused in the hearer a realistic apprehension of immediate injury.

The menacing statute extends beyond the traditional limits of assault. Menacing may be committed in alternate ways, either by words or by conduct. The Commentary leaves no doubt that the crime extends to uttering words alone. It states, "[m]enacing is intended to cover not only menacing physical acts but also threatening words unaccompanied by a physical movement. The following conduct would be considered menacing: X stands with his right hand in his coat pocket and threatens to shoot Y."[7] Commentary to Proposed Oregon

---

[7] It is precisely this situation which a New York court has held does not constitute menacing under its statute. *People v. Stephens,* 100 Misc 2d 267, 418 NYS2d 868 (1979), interpreted the statutory element "by physical menace" to mean that "in order to be convicted of the crime of menacing the defendant must have committed a physical act which in and of itself placed another person in fear of imminent serious injury. Statements should not be considered since they are not within the contemplation of the statute." 418 NYS2d at 869.

Criminal Code 96, § 95 (1970). The modern offense of menacing no longer falls within the confines of the conventional crime of assault from which it derives. It is no longer "wholly confined within [its] historical exception." *State v. Robertson, supra,* 293 Or at 412. The question remains whether the law is intended to limit communication itself, or whether its prohibition is directed against causing or attempting to cause some harm which may be brought about only incidentally by communication. *State v. Robertson, supra,* 293 Or at 414-15.

The concern of the menacing statute appears to center on preventing harm to the victim in the form of tension, alarm and whatever injury may result from the confrontation. The state may forbid actually placing another in fear of imminent serious physical injury, unless such conduct is privileged. This is the type of statutory prohibition "directed in terms against the pursuit of a forbidden effect" which we found constitutionally permissible in *Robertson,* 293 Or at 415. The state may likewise prohibit attempts to bring about the same forbidden effect, as it did in the menacing statute.[8] The fact that the harm may be brought about by use of words, even by words unaccompanied by a physical act, does not alter the focus of the statute, which remains directed against attempts to cause an identified harm, rather than prohibiting the use of words as such.

In this regard it is helpful to compare the section of the disorderly conduct statute we addressed in *State v. Spencer,* 289 Or 225, 611 P2d 1147 (1980). That statute, ORS

The state argued in the instant case that the arousal of fear of imminent serious physical injury could be brought about by words only if the actor's "passive" conduct also suggested a present ability to carry out the threat. The state elaborates on the above example and suggests that "the same words, uttered with one's hands at one's sides and obviously empty, would not put a reasonable person in fear of imminent injury, and therefore would not constitute menacing as a matter of law." The state's interpretation is supported by a statement in the Commentary that "[o]bviously empty threats to inflict serious injury are not so harmful as to deserve criminal sanction." Commentary to Proposed Oregon Criminal Code 96, § 95 (1970). It should be noted that less serious conduct such as pranks and jokes are exempt from this statute's coverage. *Id.*

[8] Our statutory provisions regarding attempt crimes apply to menacing, so that the crime would not be made out unless one "intentionally engages in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405. Our judicial interpretations of the requirements for the crime of attempt also apply. *State v. Moore,* 194 Or 232, 241 P2d 455 (1952); *State v. Taylor,* 47 Or 455, 84 P 82 (1906).

166.025(1)(c), prohibited a person from "us[ing] abusive or obscene language, or mak[ing] an obscene gesture, in a public place; * * *" "with intent to cause public inconvenience, annoyance or alarm * * *." In *Spencer* we held this statute unconstitutional as written because it "does not require that the words spoken actually cause 'public inconvenience, annoyance or alarm.' The statute makes the speaking of the words themselves criminal, if spoken with the requisite intent, even if no harm was caused or threatened." 289 Or at 229. The menacing statute, in contrast, prohibits a person from using words as a means to attempt to evoke fear of assault in the hearer. Attempting to instill fear is the activity restrained by the menacing statute and prohibiting communication effectuating this end is incidental to the purpose of the law.

■  Attempt crimes, as this one is, present their own difficulties in application because the crime may be made out even when the desired result is not achieved. But this is a question of the proper application of the statute in a particular case,[9] and does not address whether the law is one "restricting the right to speak * * * on any subject whatever." We find that the menacing statute is not on its face such a restriction on speech. The statute declares unlawful the pursuit of an effect on the hearer, the generation of fear. Though it may be accomplished in a number of ways, among them the use of words, it is, nonetheless, the attempt to achieve the effect of fear, not the communication itself, that the statute makes criminal.

■  Defendants challenge the statute as overbroad, arguing that some communications which deserve constitutional protection fall within the expanse of the menacing statute. The inquiry in an overbreadth analysis is whether there are instances in which one is constitutionally privileged to engage in the conduct proscribed by the statute, in this case to attempt by words to place another in fear of imminent serious physical injury. We have indicated that "to the extent that an

---

[9] Attempt crimes which may be committed by communication alone, because they implicate article I, section 8, require particularly sensitive treatment. A prosecution for menacing challenged on free speech grounds must be evaluated with attention to the objective likelihood and imminence of the harm threatened. *Cf. Schenck v. United States,* 249 US 47, 39 S Ct 247, 63 L Ed 470 (1919); *see* Linde, *"Clear and Present Danger" Reexamined: Dissonance in the Brandenburg Concerto,* 22 Stan L Rev 1163 (1970).

overbroad law forbids what may not constitutionally be forbidden, it is invalid as such without regard to the facts in the individual case." *State v. Blocker,* 291 Or 255, 261, 630 P2d 824 (1981).[10] Defendants posit examples of privileged communication: a police officer communicating a warning of a bomb threat to the occupants of a building, a doctor informing a patient of a serious illness and one actor menacing another in the course of a performance.

■ We interpret the menacing statute with reference to its common law assault origins. Common law assault could only occur in a face to face confrontation in which the harm threatened would be caused by the threatener. Implicit in the term "menacing" is a hostile relationship between the actor and victim. And by this statute's terms, the threatened harm must be imminent and serious. These elements of the crime of menacing compel an interpretation that would exclude from the statute's coverage defendants' examples of protected communication. There is no indication in the legislative history, beyond the extension of the crime to words unaccompanied by gestures, that the statute deviates from any other feature of the common law offense.[11] This is not a statute that, "when extending an older crime to wider 'subjects' of speech or writing," has left "its historical analogue behind and, perhaps

---

[10] In *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982), we had occasion to consider a refinement to the overbreadth analysis. We recognized that a statute which reaches constitutionally protected behavior only rarely when compared with legitimate applications of the law need not succumb to an overbreadth attack. Such a statute may be interpreted as impliedly excluding the protected activity from coverage. 293 Or at 437, n. 32.

[11] Defendants point to sections in the Commentary which appear to expand the reach of the menacing statute beyond the confines we have identified. One section in particular causes confusion:

"Unsuccessful attempts to place another in fear are included within the menacing section. It is intended that the following cases would constitute the offense of menacing:

"(1) The victim apprehends the danger but does not fear it.

"(2) The actor's conduct is such as would cause fear to a reasonable man but the intended victim is aware that the actor will not inflict the threatened harm, *e.g.,* victim knows the actor's gun is not loaded.

"(3) The intended victim is unaware of the actor's threat, *e.g.,* he is blind and does not know the actor is pointing a gun at him."

Attempts are, by definition, unsuccessful. The adjective cannot serve to expand the conduct made criminal by the statute to include words and acts not likely and intended to cause fear of imminent serious physical injury.

inadvertently, reach[es] instances of privileged expression." *Robertson, supra,* 293 Or at 434. When interpreted in the context of its common law assault origins, the menacing statute does not reach communications protected either by the constitution or by common law privileges.

Defendants' argument that the statute is unconstitutionally vague is the mirror of their overbreadth challenge. They assert that if the doctor or police officer in the hypotheticals mentioned above has committed menacing, the statute is overbroad; if they have not committed menacing, the statute is vague because it fails to distinguish these cases from criminal acts.

As we interpret the statute, defendants' hypotheticals are excluded from coverage. The question is whether the terms of the statute separate this hypothetical conduct from the conduct it makes criminal in a manner "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *State v. Hodges,* 254 Or 21, 27, 457 P2d 491 (1969).

In *State v. Anderson,* 56 Or App 12, 641 P2d 40 (1982), the Court of Appeals upheld the menacing statute against a vagueness challenge. The court found the proscribed conduct sufficiently discernible because "[t]he statute employs words which are either defined elsewhere in the criminal code, or are in common usage." (Footnote omitted.) 56 Or App at 15. We agree.

The harassment statute we found unconstitutionally vague in *State v. Blair,* 287 Or 519, 601 P2d 766 (1979), suffered from two failings which contributed to its vagueness: Harm to others was not an element of the crime and the statutory requirement of an "intent to harass, annoy or alarm another person" provided no guidance in defining the conduct which may or may not succeed at this endeavor.[12] In addition,

---

[12] ORS 166.065(1)(c) provided:

"A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:

"* * * * *

"(c) Communicates with a person, anonymously or otherwise, by telephone, mail or other form of written communication, in a manner likely to cause annoyance or alarm; * * *."

"annoyance" and "alarm" are words of broad and often subjective meaning and the communications "likely to cause annoyance or alarm," those proscribed by the statute, are at least as expansive as the words themselves.

■　　These deficiencies are not present in the menacing statute. There is a harm to be caused, fear of imminent serious physical injury, and it is specific enough that it can be caused only by a narrow category of conduct, a face to face confrontation between actor and victim. In addition, attempt crimes require "conduct which constitutes a substantial step toward commission of the crime." ORS 161.405(1). This additional limitation further clarifies the conduct proscribed by the statute.

In *State v. Gordineer,* 229 Or 105, 111-12, 366 P2d 161 (1961), in the context of an equal protection challenge to two statutes providing different penalties for allegedly the same conduct, we stated: "In creating an offense, the legislature may define it by a particular description of the act or acts constituting it or may define it as any act which produces, or is reasonably calculated to produce, a certain defined or described result." In the menacing statute the legislature defined the crime by the latter means. The result or harm is narrow and explicit, and the acts reasonably calculated to produce that result are limited. We find that the statute adequately informs citizens, judges, juries and prosecutors of the conduct it makes criminal.

The decision of the Court of Appeals is affirmed.