648 December 30, 2025 No. 57

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

JOSHUA BRANDON WILLIAMS,
*Petitioner on Review.*

(CC 22CR05814) (CA A178802) (SC S070834)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 7, 2025, at Willamette University College of Law, Salem, Oregon.

Laura A. Frikert, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the brief for petitioner on review. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

E. Nani Apo, Assistant Attorney General, Salem, argued the cause and filed the briefs for respondent on review. Also on the briefs were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

DeHOOG, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

_____
  * On appeal from Baker County Circuit Court, Matthew B. Shirtcliff, Judge. 330 Or App 222 (2024) (nonprecedential memorandum opinion).

**DeHOOG, J.**

Under the Oregon Criminal Code, a person commits the crime of third-degree robbery if, in relevant part, the person "uses or threatens the immediate use of physical force upon another person" during a theft or attempted theft. ORS 164.395(1). At issue in this case is whether defendant's conduct rose to the level of "physical force," specifically, whether defendant used or threatened the immediate use of "physical force upon another person" when he grabbed a motel keycard from a guest's hand without otherwise touching or threatening the guest in any way.

In this case, the trial court denied defendant's motion for judgment of acquittal, in which he had asserted that the evidence was insufficient to establish "physical force." *See State v. Williams*, 330 Or App 222, 223 (2024) (nonprecedential memorandum opinion). The Court of Appeals affirmed, concluding that defendant's challenge was foreclosed by that court's own case law. *Id*. at 223 (citing *State v. Johnson*, 215 Or App 1, 5-6, 168 P3d 312, *rev den*, 343 Or 366 (2007) (holding that a person uses "physical force" for purposes of the robbery statute by "taking the victim's property so quickly that resistance is futile")). As explained below, we conclude that the legislature did not intend the crime of robbery to encompass conduct such as defendant engaged in here. Rather, based on the text, context, and legislative history of ORS 164.395, we conclude that the legislature intended "physical force upon another person" to encompass contact with another person that either causes bodily harm to the person or is reasonably capable of creating a sense of fear or danger that such harm will occur. Here, no rational juror could find that defendant's actions met that standard. Thus, we conclude that the trial court erred in denying defendant's motion for judgment of acquittal and, accordingly, reverse the judgment of the trial court and the decision of the Court of Appeals.

## I.  BACKGROUND

A.  *Standard of Review*

"Because the issue on review arises from the trial court's denial of defendant's motion for judgment of acquittal, we view the evidence in the light most favorable to the

state to determine whether the evidence produced at trial was sufficient to allow a rational trier of fact, drawing reasonable inferences, to find the elements of the alleged crime[ ] beyond a reasonable doubt." *State v. Wallace*, 373 Or 122, 125-26, 561 P3d 602 (2024). We first describe the evidence in accordance with that standard, then proceed to describe the procedural history and the parties' respective arguments.

B.   *Factual and Procedural History*

      RH, who was a guest at a motel, left his room to get something from his car. While walking to the parking lot, RH noticed that defendant, whom he did not know, was walking next to him. RH retrieved the item from his car and walked back to the motel. Defendant remained at RH's side. At the entrance to the motel, RH removed his keycard from a pocket, unlocked the door, and asked defendant if he was coming in. Without giving an answer, defendant grabbed the keycard from RH's hand and ran into the motel. RH followed defendant and suggested to him that they go to the front desk "to take care of this." Defendant then ran back outside through the same door, at which point RH saw defendant throw the key card into the air. RH went to the lobby to alert a manager, who called the police. While waiting for the police, the manager saw defendant walking out of a motel room that was not his. The manager yelled for defendant to stop. Instead, defendant ran off, and RH and the manager chased after him. Eventually, RH caught defendant and pinned him against a doorframe until police arrived. RH testified that defendant did not verbally threaten him or otherwise say anything during this encounter.

      A police officer arrived at the motel and questioned defendant. According to the officer, defendant told him that he had initially believed that RH's keycard was his own, even though defendant had not been a guest at the motel. Defendant claimed that, upon realizing his error, he had thrown the keycard to the ground. The officer also took a statement from RH, who was "very clear that there was no physical altercation * * * when the card was taken." According to the officer, there also was no evidence that defendant had made any direct contact with RH's hand when defendant grabbed the keycard from him.

Defendant was charged by indictment with one count of third-degree robbery under ORS 164.395.[1] That statute provides, in part:

"(1)   A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft *** the person uses or threatens the immediate use of *physical force upon another person* with the intent of:

"(a)   Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b)   Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle."

(Emphasis added.)

After the state rested its case at trial, defense counsel moved for judgment of acquittal. Defendant did not dispute the theft component of the robbery charge.[2] He argued, however, that the state had failed to present sufficient evidence that, in the course of committing or attempting theft, he had "used or threatened the immediate use of physical force upon" RH, as required by ORS 164.395(1):

"There were not even any words exchanged. So the question is whether the simple act of removing the card from the person's hand is an act of physical force. And here *** it's very clear that my client did not even touch [RH]'s hand. It is simply an act of certainly what could be alleged as a theft."

In response, the state argued that the Court of Appeals' decision in *Johnson* foreclosed defendant's motion. *See Johnson*, 215 Or App at 5-6 (holding that a person uses "physical force" sufficient to support a robbery conviction by "taking the victim's property so quickly that resistance is futile").

---

[1] Defendant was also charged with one count of first-degree criminal trespass (ORS 164.255), but his conviction for that offense is not at issue on review.

[2] ORS 164.015 defines "theft" and provides, in relevant part, that "[a] person commits theft when, with intent to deprive another of property ***, the person[,]" among other things, "[t]akes *** such property from an owner thereof[.]"

The trial court denied the motion, concluding that the state's evidence was sufficient:

"And the alleged victim did indicate that this happened very fast. The [d]efendant moved—grabbed it quickly.

"He wouldn't have had—an inference can be drawn that he wouldn't have had time to even squeeze down and sort of resist based on [defendant's] quick actions. And I was wrestling with this before I even read this case and thinking that technically force could be action depending on your definition of force. If it's—if you move quickly and intend to use force and intend to react, [in]tend to make contact with somebody quickly to take something, I do think that could be sufficient so that they don't know if your intent is so that they won't know in time to overcome any resistance.

"I think in light of [*Johnson*] and this clear finding especially as it relates to the perpetrator's intent and the fact that swift action is determined sufficient to effectively create a situation where the victim doesn't have time to resist. In light of this caselaw and that definition I do think there's sufficient evidence to deny the judgment of acquittal as to the use of force.

"So I'm going to give that to the jury based on the caselaw and that finding. So the motions are denied on judgment of acquittal."

Defendant appealed, challenging the denial of his motion for judgment of acquittal. Among other things, defendant contended that, to the extent that the Court of Appeals' decision in *Johnson* had held that third-degree robbery "can be accomplished without violent force," that opinion conflicted with *State v. Hamilton*, 348 Or 371, 378, 233 P3d 432 (2010), in which this court stated that "actual or threatened violence" is the factor that "transforms" theft to robbery. Defendant acknowledged that *Hamilton* did not directly address the degree of force required to qualify as "physical force" for purposes of ORS 164.395(1). Defendant argued, however, that *Johnson*'s interpretation of "force" erroneously conflicted with that term's plain meaning, which defendant argued was shown in dictionary definitions to contemplate "a significant rather than a minimal level of strength or energy[.]" Separately, relying on this court's decision in *State v. Marshall*, 350 Or 208, 253 P3d 1017 (2011), defendant

argued that "physical force" for purposes of ORS 164.395(1) "must be greater than or qualitatively different from the force of contact that is inherent in an act of theft from a person." *See Marshall*, 350 Or at 221 (construing "forcible compulsion" element of first-degree sexual abuse—when committed through physical force—to require force "greater than or qualitatively different from the simple movement and contact that is inherent in the action of touching an intimate part of another").

In the Court of Appeals, the state, like the trial court, relied on *Johnson*, arguing that defendant had not satisfied that court's "stringent standard" for overruling its own precedent. *See State v. Civil*, 283 Or App 395, 417, 388 P3d 1185 (2017) (Court of Appeals' "plainly wrong" standard is "rigorous" and "satisfied only in exceptional circumstances"). The state further argued that "force" had more than one plausible meaning, contrary to defendant's assertion that "force" necessarily meant a significant degree of energy or strength. As for this court's decision in *Marshall*, the state argued that the interpretation of the "forcible compulsion" element of ORS 163.427(1)(a)(B) in that case was "inapplicable" to the proper interpretation of the "physical force" element of ORS 164.395(1).[3]

The Court of Appeals affirmed the trial court, concluding in a short nonprecedential memorandum opinion that *Johnson* controlled and that defendant's arguments for overruling that opinion were neither qualitatively new nor sufficiently persuasive to satisfy *Civil*'s "rigorous" standard. *Williams*, 330 Or App at 223.

Defendant sought review in this court, which we allowed.

## II.   DISCUSSION

As in the Court of Appeals, the principal dispute between the parties in this court concerns the meaning of "physical force" in the phrase "physical force upon another

---

[3] The state also argued that, if the court agreed with defendant that the evidence was insufficient, the proper remedy would be to reverse and remand to the trial court with instructions to enter a conviction for *attempted* third-degree robbery.

person," ORS 164.395 (defining third-degree robbery). We resolve that dispute by applying the statutory interpretation framework that this court first articulated in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and later modified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Under that framework, we seek to determine the legislature's intended meaning for a statute by examining the statutory language in context, together with any legislative history that we find helpful to that inquiry. *Gaines*, 346 Or at 171-72; *see also* ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible.").

On review, defendant constructs his primary argument around *Gaines*. But rather than focusing on the plain meaning of "force," as he did in the Court of Appeals, defendant urges us to construe "physical force" consistently with its established legal meaning at the time the robbery statutes were enacted in 1971, which, according to defendant, was "violent force capable of causing physical pain, bodily harm, or injury." *See* Or Laws 1971, ch 743, § 148 (enacting third-degree robbery statute); *Black's Law Dictionary* 1304 (4th ed 1951) (defining "physical force" as "force applied to the body; actual violence"). Defendant separately reprises his alternative argument that this court should construe "physical force" consistently with its construction of "forcible compulsion" in *Marshall*.

For its part, the state does not dispute that "physical force" could be a legal term of art. The state contends, however, that it does not matter whether we give that term its legal or ordinary meaning; in the state's view, our conclusion should be the same either way: "physical force," as used in the robbery statutes, encompasses "any degree of bodily force." As for defendant's alternative argument, the state contends that *Marshall* is inapposite, because its holding is not based on the text, context, or legislative history of ORS 164.395, but rather on the court's reasoning regarding the sexual abuse statute at issue in that case, which, in the state's view, has no bearing on the meaning of "physical force" as used in the robbery statutes.

We ultimately conclude that neither party has it quite right. Although the plain text of ORS 164.395 does not alone resolve the meaning of "physical force," the context and legislative history of the statute indicate that the term is neither as broad as the state contends, nor as narrow as defendant's "violent force" argument would render it.

Rather, for the reasons set forth below, we conclude that "physical force upon another person" means contact with another person that either causes bodily harm to the person or is reasonably capable of creating a sense of fear or danger that such harm will occur.[4]

A.   *The Disputed Text: "Physical Force"*

We begin with the text of ORS 164.395(1), specifically, "physical force upon another person[.]" As noted, ORS 164.395 provides, in relevant part, as follows:

> "(1)   A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft *** the person uses or threatens the immediate use of *physical force upon another person* with the intent of:
>
> "(a)   Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or
>
> "(b)   Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle."

(Emphasis added.)

Like the parties and the courts below, we focus on the term "physical force." In doing so, however, we remain cognizant that, to qualify as "physical force," the force used (or threatened to be used) must be "upon another person." That is, there is no contention that the robbery statutes reach conduct or threatened conduct exerted solely upon an

---

[4] We find ample support for that conclusion in our review of the robbery statutes, closely related statutes, and case law discussing both. As a result, we need not consider defendant's alternative argument that we should adopt *Marshall*'s definition of "forcible compulsion" for purposes of the "physical force" element of robbery.

object, whether the keycard in this case or any other nonhuman target, nor do we see a basis for any such contention.[5]

Neither ORS 164.395 nor any other provision of the Criminal Code defines "physical force" for purposes of the third-degree robbery statute. Thus, we begin with the assumption that the legislature intended to give that term its "plain, natural, and ordinary meaning." *See PGE*, 317 Or at 611 (so stating with regard to "words of common usage"). However, that assumption can give way if, as defendant urges here, we conclude that the legislature intended to give the disputed text an established legal meaning. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) (if the legislature intended to give effect to a legal term of art, we look to the term's "established legal meaning"); *see also Zimmerman v. Allstate Property and Casualty Ins.*, 354 Or 271, 280, 311 P3d 497 (2013) (if a term has "acquired a specialized meaning in a particular industry or profession, * * * we assume that the legislature used the term consistently with that specialized meaning").

As noted, there is no real dispute whether the legislature intended to give "physical force" in the robbery statutes an ordinary or specialized meaning. Rather, the dispute is essentially whether, assuming that the legislature intended "physical force" to have an established legal meaning, it necessarily intended to limit that term to the meaning given to it in legal dictionaries, which defendant contends would limit its scope to *violent* force. As we will explain, although the legislature intended the term "physical force" to reflect various criminal laws in existence at the time that it enacted the robbery statutes, it does not appear to have wholly adopted a specific legal definition, such as that found in legal dictionaries. *See Marshall v. PricewaterhouseCoopers, LLP*, 371 Or 536, 541, 539 P3d 766 (2023) ("When a term is drawn from the legal field, we often look to its established legal meaning as revealed by, for starters at least, legal dictionaries." (Internal quotation marks omitted.)). Rather, the legislature appears to have intended to give that term a somewhat broader meaning,

---

[5] To be clear, we do not intend to suggest that the required use or threatened use of force upon another person must be direct, as opposed to indirect through the use of a weapon or other means of exerting force upon another person.

albeit one consistent with the underlying purposes of the robbery statutes. Thus, although the established legal definition of "physical force" will aid us in determining the legislature's intended meaning for that term, in this instance we consider it in the course of applying our standard *PGE/Gaines* framework and not as the starting point—or endpoint—of our analysis.

Turning to that analysis, then, we start by considering any standard dictionary definitions that "physical force" may have. *See State v. Eggers*, 372 Or 789, 798, 558 P3d 830 (2024) (dictionaries serve as the "starting point in our analysis because they provide a range of possible meanings that a given word could reasonably have"). As the parties acknowledge, our most frequent source of ordinary meaning, *Webster's Third New Int'l Dictionary*, does not define "physical force" as a whole, but it does define that term's constituent parts, "physical" and "force." Beginning with "force," *Webster's* defines that word as:

> "**1 a :** strength or energy esp. of an exceptional degree : active power **:** VIGOR **b :** physical strength or vigor of a living being *** **c :** power to affect in physical relations or conditions *** **3 a :** power, violence, compulsion, or constraint exerted upon or against a person or thing *** **b :** strength or power of any degree that is exercised without justification or contrary to law upon a person or thing **c :** violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death."

*Webster's* at 887 (unabridged ed 2002).[6]

As we previously noted in *Eggers*, the *Webster's* definition of "force" covers a "wide range of conduct[.]" 372 Or at 799. Although some senses of "force" speak to a "violent" or an "exceptional" degree of strength, others invoke "strength or power *of any degree* that is exercised without justification or contrary to law upon a person or thing." *Webster's* at 887

---

[6] Although we have cited to the 2002 printing of *Webster's*, its definitions are contemporaneous for the 1971 adoption of the third-degree robbery statute. *See State v. Eastep*, 361 Or 746, 751 n 2, 399 P3d 979 (2017) (explaining that "any version of *Webster's Third*—regardless of its copyright date—provides a relevant source of ordinary meaning for statutes enacted any time after 1961, if not earlier").

(emphasis added). Thus, although, as defendant notes, the thrust of those various definitions of "force" can be understood as suggesting an expenditure of energy that is sufficient to overcome—or at least limit—resistance, that is not the only connotation that *Webster's* recognizes.

At the time the robbery statutes were enacted, another standard resource, *The American Heritage Dictionary of the English Language*, defined "force," in relevant part, as "[c]apacity to do work or cause physical change; strength; power;" and "[p]ower made operative against resistance; exertion[.]" *The American Heritage Dictionary of the English Language* 513 (1st ed 1969); *see, e.g.*, *DCBS v. Muliro*, 359 Or 736, 747, 380 P3d 270 (2016) (consulting *American Heritage Dictionary* as additional source of ordinary meaning). Moreover, the synonyms that *American Heritage* provides for "force" include "compel," "coerce," and "constrain," and it goes on to explain that the term "usually implies the exertion of physical strength or the operation of circumstances that permit no alternative to compliance." Thus, although the *American Heritage* entry does not use the term "violence," it otherwise largely tracks one of the meanings of "force" articulated in *Webster's*: "power, violence, compulsion, or constraint exerted upon or against a person or thing." *Webster's* at 887. Moreover, that definition aligns in part with defendant's interpretation of "physical force," in that it conveys a measure of compulsion sufficient at least to temper any response: "operat[e] *against* resistance"; "compel"; "coerce"; or "constrain[.]" *American Heritage* at 513. But although the *American Heritage* definition of "force" might well encompass violent conduct, nothing in that definition necessarily excludes forms of compulsion that are *not* violent. That observation, together with the fact that *Webster's* more broadly defines "force" as including "power *of any degree*," *Webster's* at 887 (emphasis added), forecloses at this stage any conclusion that the state's proposed meaning—"any degree of bodily force"—is implausible. *See Eggers*, 372 Or at 799 (making same observation with regard to meaning of "physical force" in ORS 166.255 (prohibiting possession

of firearms by, among others, persons convicted of domestic violence misdemeanors involving a use of "physical force")).[7]

Turning to "physical," that word, unlike the word it modifies—"force"—appears to have a rather straight-forward connotation when used in the phrase "physical force." Although *Webster's* provides several definitions for "physical," the only sense that coheres grammatically with "force" relates to *bodily* force:

> "**4 a :** of or relating to the body ([*physical*] strength)—often opposed to *mental*[.]"

*Webster's* at 1706 (emphasis in original); *see also Marshall*, 350 Or at 219 n 10 (observing, in the context of the first-degree sexual abuse statute, that "'physical' force is * * * bodily or material (as opposed to mental or moral) force").[8] So understood, the use of the word "physical" to modify force does not materially advance our understanding of the degree of force necessary to qualify as "physical force" for purposes of the robbery statute. It is, however, consistent with the statutory requirement under ORS 164.395(1) that the force used or threatened to be used be "upon another person"—that is, whatever degree of force the statute contemplates, it must be force that is exerted through bodily contact "upon" something else, specifically, "another person."

Collectively, those dictionary definitions suggest to us that, in isolation, the term "physical force" refers to "bodily or material force," as we reasoned in *Marshall*, but that "force" itself does not necessarily have a minimum threshold. Thus, "physical force" can be "violent," as defendant contends, but in ordinary usage it can also fall well short of such character, so long as it constitutes an exertion or showing of strength or power of at least some degree—"*any* degree"—upon another person. *Webster's* at 887 (emphasis added). And although, given their common themes of "strength," "vigor," and "compulsion,"

---

[7] Although we construed the term "physical force" in *Eggers*, neither party suggests that our interpretation in that case, which considered the legislature's intent in adopting that language from an analogous federal statute, controls its meaning here.

[8] The relevant definition of "physical" in *The American Heritage Dictionary* is virtually identical to that in *Webster's*. *American Heritage* at 989 (defining "physical," in part, as "[o]f or relating to the body" and referencing synonyms listed under "bodily").

the definitions as a whole can reasonably be understood to reflect something more than a *de minimis* exertion or showing of power, they do not alone persuade us that the legislature must have had that meaning in mind when it enacted the robbery statutes and their requirement of "physical force."

In contrast to those general usage dictionaries, which only define "physical" and "force" separately, *Black's* provides a legal definition for the combined term "physical force." *See Black's* at 1304 (4th ed 1951). And, as noted, that definition is consistent with defendant's interpretation, defining "physical force" as "[f]orce applied to the body; actual violence." *See id.* at 54 (defining "actual violence" and stating that "[t]he term violence is synonymous with physical force, and the two are used interchangeably in relation to assaults"). Thus, to the extent that the legislature intended to use "physical force" as a legal term of art, that resource tends to support defendant's view that, to commit robbery, one must use or threaten violence with the intent to overcome resistance on the part of another.

B.　*"Physical Force" in Context*

We do not, of course, rely solely on dictionary definitions, nor do we construe statutory text in isolation. As we have explained, dictionary definitions "should not be relied on to resolve a dispute about plain meaning without critically examining how the definition fits into the context of the statute itself." *State v. Gonzalez-Valenzuela*, 358 Or 451, 461, 365 P3d 116 (2015); *see also State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) (stating that dictionaries "do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used" (emphasis in original)). We therefore proceed to the relevant context, which, under our framework, includes other provisions of ORS 164.395, provisions of related statutes, the preexisting statutory framework in which the statute was enacted, and prior opinions of this court interpreting the statutory text. *See Wallace*, 373 Or at 133 (describing what constitutes a statute's "context").

The immediate context of ORS 164.395(1) includes paragraphs (a) and (b) of that subsection, which describe

the forms of "intent" that may serve as the basis of a third-degree robbery charge. As set out under ORS 164.395(1), a person commits that offense if the person uses or threatens the immediate use of "physical force" upon another, and the person acts with the intent of:

> "(a)   Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

> "(b)   Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle."

Neither of those paragraphs expressly informs the meaning of "physical force." They do not, for example, state that "physical force" must be "violent force capable of causing physical pain, bodily harm, or injury," as defendant contends, nor that "any degree" of force will suffice, as the state suggests. However, by prohibiting conduct *intended* to accomplish a certain result—here, "[p]reventing or overcoming resistance" or "[c]ompelling" another to take some action—the legislature seems most likely to have sought to address bodily contact with another person that is capable of *achieving* such results. That is, acts or threats that are incapable of countering resistance or discouraging noncompliance do not seem to have been the legislature's concern. Stated yet another way, the legislature's most likely focus was on *conduct*—the threatened or actual use of physical force—and its consequences—the creation of actual or potential harms—rather than on a person's particular intent, regardless of any potential consequence. Yet, construing "physical force" to encompass "any degree of bodily force," as the state urges, would effectively blur that focus, as it would punish a defendant for robbery when the person's conduct was materially indistinguishable from theft. Although that consequence does not compel defendant's understanding of the robbery statute, it weighs against the state's argument equating "physical force" with "any degree of bodily force."

Beyond those immediate provisions, the relevant context of ORS 164.395 also includes the other robbery statutes. The Oregon Criminal Code sets out three degrees of

robbery: third-degree robbery, ORS 164.395; second-degree robbery, ORS 164.405; and first-degree robbery, ORS 164.415.

Viewed as a whole, the robbery statutes can be seen as working together to define the respective degrees of robbery. Third-degree robbery, as defined under ORS 164.395, establishes the base level of that offense. If, in addition to committing that base-level offense, a person engages in certain additional conduct or there are additional factors present beyond those required to establish third-degree robbery, then that offense may be elevated to second- or first-degree robbery. Specifically, a person commits the offense of second-degree robbery under ORS 164.405(1) if the person engages in conduct constituting third-degree robbery *and* the person

"(a)  Represents by word or conduct that [they are] armed with what purports to be a dangerous or deadly weapon; or

"(b)  Is aided by another person actually present."

Similarly, a person commits first-degree robbery under ORS 164.415(1) when their conduct constitutes third-degree robbery *and* the person

"(a)  Is armed with a deadly weapon;

"(b)  Uses or attempts to use a dangerous weapon; or

"(c)  Causes or attempts to cause serious physical injury to any person."

Like the underlying third-degree robbery statute, those provisions appear to focus on the harm that a person's conduct causes or the risk that it creates, lending further support to the notion that the degree of force used or threatened is significant, *i.e.*, that not just "any degree" of force will do.

The state points out that those statutes do not require a defendant to have "actually caused anyone harm." True, but that may miss the point. Much like the third-degree robbery statute, which elevates a simple theft to the more serious crime of robbery based on a person's use or threatened use of physical force, the second-degree robbery statute does essentially the same thing based upon the person

engaging in aggravated conduct, including "represent[ing] by word" that they are armed with a dangerous or deadly weapon, or being "aided by another person actually present," ORS 164.405(1)(a), (b). Although those aggravating circumstances do not, as the state notes, require actual harm, they do tend to increase any harm or risk of harm that the person may cause the victim by heightening their terror through an implicit threat of serious injury or death, by causing similar mental suffering through the threat of harm from multiple assailants, or by subjecting them to actual harm from those same assailants. Similarly, in further elevating robbery to a first-degree offense, ORS 164.415(1) focuses on conduct that either aggravates the harm that the victim suffers or increases the risk that serious harm will result. *See* ORS 164.415(1)(a) (robbery is a first-degree offense if the person is "armed with a deadly weapon"); ORS 164.415(1)(b) (same if the person "[u]ses or attempts to use a dangerous weapon"); ORS 164.415(1)(c) (same when the person "[c]auses or attempts to cause serious physical injury" to another). Those provisions reflect the legislature's understanding that the use or threatened use of physical force has consequences beyond facilitating a theft, as well as the legislature's intent to penalize the various degrees of robbery more severely *because of* those consequences.

In addition to the robbery statutes, the legislature has enacted other criminal statutes that include the phrase "physical force" and that provide additional context for ORS 164.395. Three of those statutes, like the robbery statutes, were enacted as part of the 1971 revision of the Criminal Code.[9] *See* ORS 162.155(1)(a) (listing "physical force" as an element of second-degree escape); ORS 162.315(2)(c) (referring to "physical force" in the resisting arrest statute); and ORS 161.195 (defining "justifiable use of physical force"). Although the legislature may have intended a different meaning for "physical force" in those statutes than in the robbery statutes, "we ordinarily assume that the legislature uses terms in related statutes consistently" unless there is evidence to the contrary. *Cloutier*, 351 Or at 99. Thus, we consider the legislature's use of "physical force" in those

---

[9] We discuss the legislature's enactment of the robbery statutes in greater detail below. 372 Or at 672-81.

statutes for any contextual evidence it may provide as to the legislature's intended meaning of that term in ORS 164.395. As we will explain, those other statutes further undercut the state's argument that "physical force" as used in the third-degree robbery statute captures conduct of the sort that defendant engaged in here.

Starting with ORS 162.155(1)(a), that provision elevates the crime of third-degree escape to a second-degree offense if a person "*uses or threatens to use physical force* escaping from custody[.]"[10] (Emphasis added.) Like the robbery statutes, the second-degree escape statute does not define "physical force." However, the official commentary for that statute explains that the use or threatened use of physical force is one of several factors that raises the "risk to others" created by a person's escape from custody. *See* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 190-92, 194-95 (July 1970) (stating that decision to increase penalty for escapes involving use or threatened use of physical force "takes as its basic rationale the *risk to others* created by the escape[,]" and that "[t]he use of force in escapes obviously increases the hazards imposed on those obligated to resist such conduct" (emphasis in original)); *see also State v. Haley*, 371 Or 108, 121, 531 P3d 142 (2023) (describing the records of the commission and its subcommittees as a "'rich source for determination of the drafters' intent'" (quoting *State v. Garcia*, 288 Or 413, 416, 605 P2d 671 (1980))). Thus, although again not necessarily advancing defendant's argument that "physical force" in the robbery statute contemplates "violence," the escape statutes and their underlying rationale do cast further doubt on the state's argument that the legislature meant the third-degree robbery statute to capture "any degree" of force, however incidental it may be.

Next, ORS 162.315 uses the term "physical force" in defining resisting arrest. Under ORS 162.315(1), that offense occurs when a person "intentionally resists a person known by the person to be a peace officer * * * in making an

---

[10] Similarly, third-degree escape is elevated to *first*-degree escape if a defendant "uses or threatens to use physical force in escaping from custody or a correctional facility" while being "[a]ided by another person actually present[.]" ORS 162.165(1)(a).

arrest." And ORS 162.315(2)(c) defines "resists" in relevant part as the "use or threatened use of violence, *physical force* or any other means that creates a substantial risk of physical injury to any person[.]" (Emphasis added.) To be sure, by listing "violence" and "physical force" as separate forms of conduct, ORS 162.315(2)(c) might suggest that nonviolent conduct may qualify as "physical force" for purposes of resisting arrest. *See also* Commentary § 206 at 204 (noting that ORS 162.315(2)(c) "defines 'resists' in terms of physical force *or* violence" (emphasis added)). But the structure of ORS 162.315(2)(c) suggests that those two forms of conduct share an important characteristic: Each "creates a substantial risk of physical injury to any person[.]" *See* ORS 162.315 (2)(c) (listing "violence, physical force or any *other* means that creates" such a risk (emphasis added)). Thus, assuming that the legislature intended "physical force" to carry the same meaning in ORS 164.395(1)—and we have found no evidence of contrary intent that would weaken that assumption—the meaning of "physical force" as used in the resisting arrest statute weighs somewhat in favor of defendant's interpretation of "physical force." That is, force that "creates a substantial risk of physical injury to any person[,]" ORS 162.315(2)(c), appears closer to defendant's "force capable of causing physical pain, bodily harm, or injury" interpretation than to the state's "any degree" argument, even if we might disagree with defendant that such force must be "violent."

Finally, the phrase "physical force" appears in a series of statutes defining the "justification" defenses. *See* ORS 161.190 (providing that, "[i]n any prosecution * * *, justification [as defined by statute] is a defense"). For example, ORS 161.205 provides that "[t]he use of physical force upon another person that would otherwise constitute an offense is justifiable and not criminal" under various circumstances, including in self-defense or in defense of a third person. *See also* ORS 161.225 (justifying the use of "physical force in defense of premises"); ORS 161.229 (justifying the use of "physical force in defense of property").

In enacting those defenses, the legislature implicitly recognized that certain uses of "physical force" would be

criminal in the absence of a valid defense. Defendant therefore reasons that physical force "necessarily embodies a level of force that would constitute a criminal offense in the absence" of one or more justification defenses. We disagree. Notably, the reference to "physical force" in ORS 161.205 does not apply to *all* uses of physical force—it applies only to such uses "that *would otherwise constitute an offense*." (Emphasis added.) Thus, rather than suggesting that "physical force" invariably means a degree of force sufficient to constitute a crime, the justification statutes merely provide defenses for certain uses of physical force that, in the absence of a defense, would rise to that level. Those statutes therefore do not assist our inquiry.

Turning to our prior case law for any guidance that it provides, we note that this court has not previously been tasked with construing "physical force" in the context of the robbery statutes. But we have previously construed other aspects of the robbery statutes in other cases. We examine those decisions below to determine whether they shed any light on the meaning of "physical force" as it appears in ORS 164.395(1).

First, in *State v. Hall*, 327 Or 568, 572, 966 P2d 208 (1998), this court construed the term "threatens" as it appears in the following phrase: "*threatens* the immediate use of physical force upon another person," ORS 164.395(1) (emphasis added). Consulting the dictionary definition of that term, we concluded that "the act of threatening another person can be *explicit* (such as uttering threats) or *implicit* (such as giving signs of the approach of something evil or unpleasant)." *Hall*, 327 Or at 573 (emphases in original). We further explained that an "implicit" threat is "something that by its nature or relation to another announces that a person's welfare is in danger." *Id*. Applying that definition, we concluded that there was sufficient evidence in that case that the defendant had implicitly "threaten[ed]" the immediate use of physical force by disguising his identity, entering a restaurant late at night, and making a "series of demands" while standing close to the victim, including that the victim "[c]ome here" and that she "put all the money into the bag [that the defendant] was carrying." *Id*. at 574.

In our view, that understanding of "threatens" lends support to defendant's interpretation of "physical force." That is, if implicitly threatening to use "physical force" means "announc[ing] that a person's welfare is in danger," *see id*. at 573, then the degree of "physical force" threatened must be sufficient—or at least intended to be sufficient—to create a perception of "danger." Defendant relies on *Hall*'s reference to "danger" in arguing that the kind of force contemplated is force that exposes a person to "harm," "pain," "injury," or "peril." *See Webster's* at 573 (defining "danger"). Notably, that definition of "danger" in *Webster's* is consistent with one of the *Webster's* definitions of "force" previously discussed. 374 Or at ___ (slip op at 11:11 - 12:4); *see Webster's* at 887 (defining "force" as "violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm, or death"). *Hall* therefore appears to support defendant's reasoning that one cannot "threaten" the use of "physical force" without creating a sense of danger, meaning that the degree of force required to constitute "physical force" must be sufficient to give rise to that perception.

We again considered the robbery statutes in *State v. Zweigart*, 344 Or 619, 188 P3d 242 (2008). There, the court considered whether there was sufficient evidence to affirm a defendant's first-degree robbery conviction. *Id*. at 632. The defendant had "orchestrated" a plan to kill his wife. *Id*. at 622, 633. Specifically, he had enlisted an accomplice to "stage a burglary at [the defendant's] home, and[,] in the process, kill his wife." *Id*. at 622-23. The accomplice entered the defendant's home at night pretending to be a burglar, while the defendant secretly played along. *Id*. at 623. After the accomplice ordered the defendant and his wife to get out of bed, he followed them at gunpoint downstairs and into the garage, where he took several weapons from a cabinet. *Id*.[11] Based on that evidence, this court had "no difficulty concluding" that the accomplice—and by extension the defendant—had "acted with force or threat of force." *Id*. at 632-33.

---

[11] What happened next was disputed at trial: Either the defendant or the accomplice shot and killed the defendant's wife. *Zweigart*, 344 Or at 623. For the killing, the defendant was also charged with and convicted of aggravated felony murder, among other counts. *Id*. at 626.

As with *Hall*, defendant contends that *Zweigart* confirms his view that a finding of physical force requires evidence that a person's threatening acts exposed the victim to the threat of physical harm, pain, or injury. However, even though we had "no difficulty concluding" in *Zweigart* that the defendant's conduct constituted a use or threatened use of "physical force," we did not hold in that opinion that only conduct that exposes another person to the threat of physical harm, pain, or injury satisfies that requirement of the robbery statute. Thus, although *Zweigart* is consistent with defendant's interpretation, that decision does not meaningfully advance our analysis.

Finally, this court has considered the robbery statutes in two other cases that help solidify our understanding of what constitutes "physical force": *State v. White*, 346 Or 275, 211 P3d 248 (2009), and *State v. Hamilton*, 348 Or 371, 233 P3d 432 (2010). Although those decisions addressed merger—specifically whether the guilty verdicts for multiple counts of robbery should merge into a single conviction—and not the meaning of "physical force," they demonstrate that this court has consistently understood the robbery statutes to focus on the sense of fear that a defendant's conduct creates.

In *White*, the defendant was found guilty of two counts of second-degree robbery based on an incident at a grocery store. 346 Or at 277. The defendant had been alleged in the first count to have committed robbery while purporting to be "armed with a dangerous *** weapon," *see* ORS 164.405(1)(a), and, in the second count, while being "aided by another person actually present," *see* ORS 164.405(1)(b). *White*, 346 Or at 277. This court found that the legislature had intended paragraphs (1)(a) and (1)(b) of ORS 164.405 as "alternative circumstances" that elevate third-degree robbery to second-degree robbery, not as separate crimes themselves. *Id.* at 291. Thus, we concluded that the trial court had erred in failing to merge the defendant's guilty verdicts. *Id.*

In reaching that conclusion in *White*, we stated that the "common concern" of the robbery statutes is "*the threat or likelihood of violence* to the victim[.]" *Id.* at 289-90 (emphasis

added). We went on to make a broader comment about the key distinction between the crimes of theft and robbery:

> "Robbery is the taking of property *using threats of violence or otherwise creating a sense of fear in the victim*, thus forcing the victim to hand over property. It is the concept of fear or threat of violence that separates robbery from mere theft. *See Black's Law Dictionary* 924 (6th ed 1991) (robbery defined as '[f]elonious taking of money *** in the possession of another *** and against his will, accomplished by means of *force or fear*' (emphasis added)); 4 William Blackstone, *Commentaries on the Laws of England* 241 (1769) ('Open and violent larciny [*sic*] from the person, or robbery, *** is the felonious and forcible taking, from the person of another, of goods or money to any value, by putting him in *fear*.' (Original emphasis omitted; emphasis added.)). *The use or threat of violence is what causes the victim to part with property, and that coercive effect is what each of the robbery statutes addresses*."

*Id.* at 290 (first and last emphases added).

This court's decision in *Hamilton* reflected the same understanding. 348 Or at 378-79. In that case, the defendant had entered a bar late at night to commit a theft. *Id.* at 373. He fired gunshots into the ceiling and ordered everyone to drop to the floor. *Id.* He then held multiple employees at gunpoint and demanded that they hand over money from a cash register. *Id.* The employees complied. *Id.* The defendant was later arrested and ultimately convicted of multiple counts of second-degree robbery, each count based on threats against a separate category of victims, including patrons and staff. *Id.* at 373-74. On appeal, the defendant argued that the trial court should have merged the jury's guilty verdicts because the legislature had intended the "victim" of robbery to be "the person from whom property is taken or demanded, and not bystanders, observers, or other persons who might suffer collateral harm." *Id.* at 374. This court disagreed, reasoning that there had been multiple victims of the defendant's conduct because the "victim" of a robbery includes "a person against whom a defendant uses or threatens *violence* in the course of committing or attempting to commit theft, which can, but does not have to, be the owner or possessor of the property." *Id.* at 378 (emphasis added).

Our observation regarding the distinction between theft and robbery in *White*, as reflected in *Hamilton*, suggests this court's continued understanding that the gravamen of robbery is not the taking of property from another, but the use of force or threats of force to accomplish that taking. It is the creation of fear of violence against the victim of a theft that warrants penalizing robbery more severely than theft alone, and the creation of fear of violence that warrants punishing a person for multiple counts of robbery despite there being a single object of the person's theft. *See White*, 346 Or at 290 (concluding that robbery necessarily involves "the taking of property using threats of violence or otherwise creating a sense of fear in the victim"); *see also Hamilton*, 348 Or at 378 (holding that a robbery "victim" is one "against whom a defendant uses or threatens *violence* in the course of committing or attempting to commit theft" (emphasis added)). And because, under ORS 164.395(1), the "use or threatened use of physical force" is the only means by which the state can prove that essential feature of a third-degree robbery charge, it would follow that the specific "physical force"—whether used or threatened—established in a given case would have to be of a sufficient degree to instill a sense of fear of violence in another. Thus, under the rationale of *White* and *Hamilton*, conduct that would not tend to cause a reasonable person to fear for their safety and wellbeing would not be the type of conduct that the legislature intended to capture as "physical force."

Collectively, the text and context of ORS 164.395 favor the conclusion that the legislature intended "physical force" to mean more than "any degree of bodily force," as the state suggests. Although the plain text of the statute leaves open the possibility that "physical force" may encompass any degree of bodily force, the context provided by other statutory provisions and our case law construing related statutory text strongly suggests a more narrow view, one that focuses on conduct that creates or is capable of creating a sense of fear or danger of violence. With that in mind, we turn to the legislative history of ORS 164.395 to determine whether it provides any additional evidence of the legislature's intent.

C.  *The Legislative History of ORS 164.395*

When construing statutes drafted by the Criminal Law Revision Commission, which include ORS 164.395, this court considers "both the commentary and the discussions" of the commission and its subcommittees to be relevant legislative history. *State v. Carpenter*, 365 Or 488, 497 n 4, 446 P3d 1273 (2019) (citing *Gaines*, 346 Or at 178); *see also Haley*, 371 Or at 121 (describing the records of the commission and its subcommittees as a "rich source for determination of the drafters' intent" (internal quotation marks omitted)). This court generally "assume[s] in the absence of other legislative history that the Legislative Assembly accepted the commission's explanations." *Id.* (internal quotation marks omitted).

The commission's official commentary does not directly address the meaning of "physical force" as it appears in the third-degree robbery statute. However, the commentary does make three points that support our preliminary conclusion regarding that meaning. First, the commentary demonstrates that the commission intended, in revising the robbery statutes, to retain the historical connection between the crimes of robbery and assault. Second, it shows that the commission intended to recast robbery from a crime focusing on the violation of another's property rights to one addressing the threat or use of violence during a completed or attempted theft. And third, the commentary indicates that the distinction between robbery and the crime of "theft by extortion" is merely temporal in nature, which, as we will explain, further supports an interpretation of "physical force" as encompassing conduct evoking fear of bodily harm.

The commentary first observes that, in Oregon, robbery has historically been intertwined with assault. Commentary § 150 at 155 (citing *Merrill v. Gladden*, 216 Or 460, 463-64, 337 P2d 774 (1959) (noting that "robbery can only be consummated through an assault" and defining an "assault" as "an intentional attempt by one person by force or violence to do an injury to the person of another coupled with the present ability to carry the intention into effect" (internal quotation marks omitted))); *see also State v. Broom, et al.*, 135 Or 641, 646, 297 P 340 (1931) (describing robbery as "open and violent larceny from the person").

To that end, the robbery statutes that predated the present-day robbery statutes, including ORS 164.395, required proof that a defendant had "assaulted" the victim or otherwise threatened violence. For example, *former* ORS 163.290 (1969), *repealed by* Or Laws 1971, ch 743, § 432, defined "unarmed" robbery and provided:

> "Any person, not being armed with a dangerous weapon, who by force and violence, or by *assault*, or by putting in fear of force and violence or assault, robs, steals, or takes from the person of another any money or other property which may be the subject of larceny, shall be punished upon conviction by imprisonment in the penitentiary for not more than 15 years."

(Emphasis added.)

Thus, under *former* ORS 163.290 (1969), unarmed robbery required, in relevant part, proof that a defendant had accomplished a theft by "force and violence, or by assault," or that they had "put[]" another person "in fear of force and violence or assault." And the commentary indicates that the revised third-degree robbery statute, later codified as ORS 164.395, was intended to cover the same conduct as *former* ORS 163.290 (1969). *See* Commentary §§ 148-50 at 154 (describing the revised third-degree robbery statute as the "'unarmed' type of robbery").[12]

The commentary notes that the revised robbery statutes, as a whole, would "retain[] the rationale" of the former robbery statutes, "*i.e.,* the prohibition against forcible taking of property from another[.]" *Id.* at 155. At the same time, the "scope" of the robbery statutes would expand to include both attempted *and* completed thefts of property. *Id.* That expansion followed Michigan's approach in its revised robbery statute, under which the "primary concern" was not whether a defendant had actually taken property from a victim, but was instead "the physical danger to the victim and his difficulty in protecting himself from sudden attacks against his person or property[.]"[13] *Id.* The commentary

---

[12] The other preexisting robbery statute was *former* ORS 163.280 (1969), *repealed by* Or Laws 1971, ch 743, § 432, which covered assault and robbery while armed with a dangerous weapon.

[13] The commentary notes that the proposed robbery statutes are "a combination of Model Penal Code § 221.1, New York Revised Penal Law

states, therefore, that "repression of violence is the principal reason for being guilty of robbery." *Id*.

Echoing that commentary, discussions in the subcommittee tasked with drafting the revised robbery statutes suggest that the objective was to retain the connection between assault and robbery that had existed in the former robbery statutes. During one drafting session, Donald Paillette, the commission's project director, spoke of the commission's intent to retain that historical connection in an exchange with Senator John D. Burns, the subcommittee's chairman:

> Senator Burns:   "I think we've got a serious policy consideration to make because in the current code, assault and robbery go hand in hand. As a matter of fact, the assault statutes contain the provisions for robbery—the unarmed robbery, the armed robbery, and so on. Here, what we're doing is we're separating robbery from assault completely, and this has been the trend. *** Now what's the rationale behind the separation?"
>
> Paillette:   "Well actually, depending on how you look at this draft, I don't think we're really departing, we're not really separating assault from the theft[.] If anything, I think we're moving in the direction of saying this is really a type of an assault more than anything else."

Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, June 22, 1968, Tape 7, Side 1.

More directly, Paillette added that the revised robbery statutes would retain the principle that "assault is fundamental to robbery":

> "Certainly, as far as Oregon court[s have] been concerned, assault is fundamental to robbery. *** So we're retaining that. We're saying that this is an assault but we're also saying that to make it robbery, there doesn't have to be any property taken. That's the big difference."

*Id*.

As for what exactly constituted "assault," at the time the commission was working on the revised the Criminal

---

§ 160.00, and Michigan Revised Criminal Code § 3307." Commentary §§ 148-50 at 155.

Code, there were several preexisting statutes criminalizing "assault" in conjunction with other conduct or other substantive crimes, including robbery. *See, e.g.*, *former* ORS 163.250 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (assault with a dangerous weapon); *former* ORS 163.255 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (unarmed assault and battery by means of force likely to produce great bodily injury); *former* ORS 163.280 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (assault with intent to kill and assault and robbery while armed with a dangerous weapon); *former* ORS 163.290 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (robbery or theft while not armed with dangerous weapon, one element of which included "assault").

However, those statutes did not contain a single, consistent definition of "assault." *See State v. Wilson*, 218 Or 575, 582, 346 P2d 115 (1959) ("We have no statute defining the crime of assault alone."). As this court observed, sometimes the statutes used "assault" interchangeably with the crime of "battery," and sometimes to describe conduct short of battery. *Id.* at 583; *see also State v. Garcias*, 296 Or 688, 692, 679 P2d 1354 (1984) (stating that "[w]hat conduct fell within the definition of assault was not always clear").

This court eventually settled on a definition of "assault" in *Gladden.* 216 Or at 463-64. After surveying the history of that offense, the court concluded that an "assault" is "an intentional attempt by one person by force or violence to do an injury to the person of another coupled with the present ability to carry the intention into effect." *Id.* Thus, the meaning of "assault" had "solidified sufficiently" by the time of the commission's work that it included both "an act which reasonably puts one in fear of corporal injury" and "an act intended to cause corporal injury by one who has the present ability to carry out such intent." *Garcias*, 296 Or at 693 (citing Commentary § 94 at 95).[14]

---

[14] In addition to the revised robbery statutes, the commission proposed and the legislature enacted a standalone crime of "criminal assault," separated into three degrees and broadly defined as the "unlawful causing of physical injury committed with the particular *mens rea* specified[.]" Commentary § 94 at 93. The crime was codified as ORS 163.165 (1971) (third-degree assault); ORS 163.175 (1971) (second-degree assault); and ORS 163.185 (1971) (first-degree assault). Each of those statutes has since been amended several times, but those amendments do not affect our analysis. In addition, the legislature later added fourth-degree

Although the commission expressly sought to retain the historical connection between assault and robbery in the revised robbery statutes, it chose not to use the term "assault" in ORS 164.395 and instead used the term "physical force." That suggests to us that the commission intended the term "physical force" to effectively function as a proxy for "assault," applying the then-existing definition of the latter term. *See Garcias*, 296 Or at 693. That, in turn, indicates that it also intended for "physical force," like "assault," to focus on the danger that the prohibited conduct presents to victims, which aligns with our preliminary understanding of "physical force" by focusing on conduct that causes or creates a heightened risk of physical harm or that would reasonably cause a person to fear such harm.

The second notable point about the commentary is that it reflects, as Paillette put it, that the "primary thing" that the revised robbery statutes would do would be to "shift the focus of the attention from the taking of the property to the risk of injury, the violence to the victim." *See* Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, June 22, 1968, Tape 7, Side 1. That is, the very reason for the robbery statutes was to address conduct that causes or "reasonably puts one in fear of corporal injury," *Garcias*, 296 Or at 693, and not the act of theft underlying an alleged robbery. To construe the term "physical force" as the state would, to encompass "any degree" of force, would return the focus to the act of theft itself, contrary to the objective that the commentary expresses.

The third aspect of the commentary that informs our interpretation of "physical force" is the commentary's distinction between robbery and the substantive crime of "theft by extortion." The commentary notes that, by "prohibiting the threat of 'immediate use' of physical force," the revised robbery statute was "distinguishable from theft by extortion." Commentary § 150 at 154-55. In turn, the commission defined "theft by extortion" in a separate section, providing that a person commits the crime, in relevant part, if they "compel[] or induce[] another person to deliver property *** by means

---

assault, codified at ORS 163.160 (1997), which has also been amended several times. Criminal assault differs from our prior conception of the crime insofar as it is "limit[ed] *** to the infliction of actual physical injury." Commentary § 94 at 95.

of instilling \* \* \* a fear that, if the property is not so delivered, the actor or another will *in the future* \* \* \* [c]ause *physical injury* to some person[.]" *Id.* at § 127 at 134 (emphases added).[15] Thus, the commentary makes clear that, when accomplished through a threat to use physical force, robbery is distinguishable from theft by extortion only because it requires an "immediate" rather than a "future" threat, and not because the form of threat differs between the two offenses. Further, because the commentary described the threatened conduct required for purposes of theft by extortion as "physical *injury*," and yet did not identify that as a distinguishing feature, the commission may well have intended for that term and "physical force" to be essentially synonymous.

        The underlying discussions of the commission similarly support that understanding. During a meeting of the subcommittee that drafted the theft by extortion statute (the same subcommittee that drafted the robbery statutes), Paillette explained that the commission had chosen to model the theft by extortion statute on New York's version of that offense, rather than on the Model Penal Code, because it drew a clear temporal distinction with robbery:

> "And [the] initial draft follows the New York approach \* \* \*, rather than the Model Penal Code. Although I don't think that in substance there's much difference between the two, \* \* \* it seems to me that the New York approach \* \* \* made a clear distinction between this and robbery. \* \* \* I don't think the language in the Model Penal Code draws that distinction well enough. In other words, they don't use 'future.' They don't use 'physical injury to the person threatened in the future.' And \* \* \* if you just say that you obtained property by threatening to inflict bodily injury, that's robbery it seems to me, or it can be robbery. If you take property from a person by threatening to inflict bodily harm on them, that's robbery, not larceny [by extortion]."

---

[15] The legislature ultimately adopted the commission's theft by extortion statute verbatim. *See* ORS 164.075 (1971), *amended by* Or Laws 1987, ch 158, § 27; Or Laws 2007, ch 71, § 48; Or Laws 2016, ch 47, § 2. For purposes of explaining the commission's intended distinction between robbery and theft by extortion, we are only concerned with ORS 164.075(1)(a), which contains the temporal ("in the future") and conduct ("caus[ing] physical injury") language at issue. Although ORS 164.075 has been amended three times since the legislature first adopted it, ORS 164.075(1)(a) remains unchanged.

Tape Recording, Criminal Law Revision Commission, Sub-committee No. 1, Mar 23, 1968, Tape 6, Side 1.

And in a later meeting of the subcommittee, Kathleen Beaufait, Deputy Legislative Counsel, had a follow-up exchange with Paillette that echoed Paillette's earlier comments:

> Beaufait: "If you are standing with a gun saying, 'your money or your life,' [versus] in the future, 20 seconds from now, 'I'm going to shoot you if you don't pull your wallet out.' *** The distinction is that's robbery and this is extortion."

> Paillette: "That's what we wanted to do—to make sure that we didn't have a section here that would be equally applicable with the crime of robbery to a certain set of facts. *** [I]f a man comes up to you and he has a gun, or even if he doesn't have a gun, and he says that I want you to give me your money or I'm going to shoot you, that would be robbery. It would be clearly robbery, but it's a threat to do bodily harm. And a threat to do bodily harm to this person could be extortion if it's a threat to do harm to him in the future. If he says, you pay me $500 or you won't live till sundown, you see, that gets to be in the extortion area then."

Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Mar 23, 1968, Tape 10, Side 2.

Beyond those records of the commission, we find further indications of the commission's intended meaning of the robbery statute in the legislative discussion of Senate Bill (SB) 40 (1971), which codified the commission's work. That discussion reflects that the legislature understood—and adopted—the commission's objectives in drafting the robbery statute, as outlined above.

The Senate first took up discussion of SB 40 in February of 1971. Before the Senate Committee on Criminal Law and Procedure, Paillette presented extensive testimony about the revised Criminal Code. In regard to robbery, Paillette stated that the revised statutes would effectively subsume the existing offenses that had criminalized assault if committed with the intent to commit other substantive crimes, including robbery:

"The draft does not contain any 'assault with intent to commit' crimes, such as we have on the books now, [like] 'assault with intent to commit robbery.' Because of our definition of 'robbery,' the intent to commit crimes are no longer necessary because robbery *** under our definition is [the] intent to forcibly take the property of another, and the actual taking of the property is not an element of robbery."

Tape Recording, Senate Committee on Criminal Law and Procedure, SB 40, Feb 23, 1971, Tape 5, Side 2.

Further, Paillette confirmed that the revised robbery statutes "concentrate[d] not on the property aspect of the crime, but on the threat to the personal safety of the victim":

"Actually, [the robbery statute's] place for purposes of classification and organization of the code, is included in the area of crimes against property but it could just as logically be placed in the crimes against persons, particularly in view of the way we have redefined the crime of robbery. We have three degrees of robbery, all of which are classified as felonies and all of which concentrate not on the property aspect of the crime, *but on the threat to the personal safety of the victim.*"

Tape Recording, Senate Committee on Criminal Law and Procedure, SB 40, Mar 3, 1971, Tape 7, Side 1 (emphasis added).

Discussing the commission's proposed theft by extortion statute in a separate hearing, Paillette explained the crime's temporal distinction with robbery:

"The crime [of theft by extortion] should also be distinguished from the crime of robbery because here we're talking about a threat to do something in the future rather a threat to do something immediately with the idea of forcing someone to turn over property to you *on the immediate threat of bodily injury, [which] of course would be robbery under our definition.*"

Tape Recording, Senate Committee on Criminal Law and Procedure, SB 40, Mar 2, 1971, Tape 4, Side 1 (emphasis added).

Paillette later testified before the House Committee on Judiciary, confirming—albeit less directly—that the

revised crime of robbery would retain its historical connec-
tion to assault:

> "Under present Oregon law, robbery can only be con-
> summated through an assault plus a taking of property
> from the person assaulted. Now the bill is in language
> *** to cover instances in which the property is taken from
> someone other than the person threatened. For example,
> a very common kind of situation is where a robber goes
> into the home of a store owner or a bank manager and the
> threat is directed at the person in the home—the wife, the
> children—and *** this becomes robbery even though the
> threat is directed at a party other than the owner or the
> property is taken from a third person."

Tape Recording, House Committee on Judiciary, SB 40,
Apr 26, 1971, Tape 28, Side 1.

When it ultimately codified the commission's pro-
posed revisions to the Criminal Code, the legislature
adopted the proposed robbery statutes verbatim, including
their "physical force" component. *See* ORS 164.395 (1971),
*amended by* Or Laws 2003, ch 357, § 1 (third-degree rob-
bery); ORS 164.405 (second-degree robbery); ORS 164.415
(1971), *amended by* Or Laws 2007, ch 71, § 51 (first-degree
robbery). And, as we have previously explained, when the
legislature has enacted text proposed by the commission,
we infer that the legislature also "accepted the commission's
explanations" about the meaning and scope of that text. *See
Haley*, 371 Or at 121 (internal quotation marks omitted). We
do the same here.

It follows that the legislative history strongly sup-
ports the same interpretation of "physical force" that our
examination of the text and context led us to. That is, to
qualify as a "use or threatened use of physical force," a per-
son's conduct must cause or create a heightened risk of the
same kinds of harms that an actual or threatened assault
causes or creates. Those harms include both bodily injury
and the reasonable fear that such bodily injury will occur.
Thus, based upon our review of the text and context, but-
tressed by our assessment of the legislative history, we con-
clude that the legislature intended for "physical force upon
another person" under ORS 164.395(1) to encompass contact

with another person that either causes bodily harm or is reasonably capable of creating a sense of fear or danger that such harm will occur. Although such force need not be "violent," as defendant argues, it necessarily requires more than just "any degree" of force.

D.  *Whether Defendant's Conduct Constituted a Use of "Physical Force"*

Applying that construction of "physical force" to the facts of this case, we conclude that no rational juror could find that defendant's conduct rose to the level of force contemplated by the legislature. First, there is no evidence that, in physically snatching the motel keycard from RH's hand, defendant caused him bodily harm, let alone did so with the requisite intent. Nor were the circumstances such that defendant's indirect contact with RH was reasonably capable of creating a sense of fear or danger that such harm would occur. Although *Hall* involved a threatened use of physical force rather than an actual use, as is the state's theory in this case, this court's opinion in *Hall* is instructive in that regard.

As noted earlier, in *Hall*, this court explained that a threat of physical force under the robbery statute may be "implicit," so long as, under the circumstances, a defendant's physical or verbal conduct is something that "announces that a person's welfare is in danger." *Hall*, 327 Or at 573. We concluded that the evidence in that case was sufficient to show that the defendant had implicitly threatened a restaurant employee when he had disguised his identity, entered a restaurant late at night, gone to the counter near a cash register, demanded that the victim come closer to him and "[p]ut all the money into [his] bag," and repeated to her, "I want all of your money." *Id.* at 570-71.

Here, in marked contrast, the only evidence was that defendant had briefly walked alongside RH until they both reached the motel entrance, quickly grabbed the keycard from RH's hand, and run off. The state does not identify anything about the circumstances that may have created a frightening atmosphere, nor does it contend that defendant's conduct was itself capable of creating a sense of

fear or danger that defendant would cause him any harm. Indeed, although the state was not required to prove that RH suffered actual fear, his response—suggesting that he and defendant go to the front desk of the motel to "take care of this"—strongly suggest circumstances that would not cause a reasonable person to feel a sense of fear or danger of bodily harm. For the same reasons, the evidence cannot support the finding that defendant *threatened* a use of physical force, which, perhaps for that reason, the state alleged but has never argued. As a result, we conclude that the state did not satisfy its burden of proving that defendant had either used or threatened the use of physical force as required to establish a robbery. The trial court and the Court of Appeals erred in concluding otherwise.[16]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

---

[16] As previously noted, the state has suggested that, if the evidence was insufficient to support defendant's conviction for third-degree robbery, the proper result is a remand to the trial court with instructions to enter a judgment of conviction for *attempted* third-degree robbery. We disagree. For many of the same reasons that the state's evidence failed to show a use or threatened use of physical force, that evidence also fails to show that defendant intentionally attempted to use or to threaten the use of physical force, with or without the specific intent required to constitute robbery. *See* ORS 161.405 (defining "attempt"); ORS 164.395(1) (requiring that defendant act with the intent of preventing or overcoming resistance to theft to constitute robbery).